United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 19, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-60478

_____

MICHAEL E. BONDS,

                                                        Petitioner,

versus

KAREN TANDY,
ADMINISTRATOR, UNITED STATES
DRUG ENFORCEMENT ADMINISTRATION

                                                        Respondent.

---

Petition for Review from a Decision
of the Drug Enforcement Administration

---

Before GARZA, PRADO, and OWEN, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Michael Bonds petitions for review of the Drug Enforcement Administration's ("DEA") decision denying Rick Quinn's waiver application that would have allowed Medical Plaza Pharmacy ("MPP") to hire Bonds. Because we hold that 21 U.S.C. § 877 limits petitions for judicial review to those litigants with Article III standing and who are also arguably within the zone of interests of the Controlled Substances Act ("CSA"),[1] we find that Bonds lacks

---

[1] 21 U.S.C. §§ 801-971.

standing to challenge the agency's final decision. Accordingly, we dismiss the petition for lack of jurisdiction.

I.   BACKGROUND

Bonds, currently a licensed pharmacist in the State of Mississippi, applied for employment as a pharmacist at MPP. Because Bonds had a prior felony conviction for the illegal distribution of a controlled substance, and because he once owned a pharmacy that had its DEA registration revoked, 21 C.F.R. § 1301.76 prevented MPP from hiring Bonds unless the DEA waives the restriction.[2] On August 23, 2004, Quinn, on behalf of MPP, applied for a waiver, but the DEA denied the application based on Bonds's criminal history and the criminal histories of MPP's owner and two of its former employees.

II.   DISCUSSION

*A.   Standard of Review*

Bonds petitions this Court for review, claiming that the DEA's decision was arbitrary and not supported by substantial evidence. The Government counters that Bonds lacks standing to appeal the DEA's decision. We review questions of jurisdiction, and specifically standing, *de novo*. *See, e.g.*, *Pederson v. La. State*

---

[2] *See* 21 C.F.R. § 1301.76(a) ("The registrant shall not employ, as an agent or employee who has access to controlled substances, any person who has been convicted of a felony offense relating to controlled substances or who, at any time, had an application for registration with the DEA denied, had a DEA registration revoked or has surrendered a DEA registration for cause."); 21 C.F.R. § 1307.03 (allowing for waiver of regulations in the Administrator's discretion). 21 C.F.R. § 1301.76(a) was promulgated under the CSA.

*Univ.*, 213 F.3d 858, 869 (5th Cir. 2000).  Although the DEA raises standing, Bonds bears the burden of persuasion.  *BCCA Appeal Group v. U.S. Envtl. Prot. Agency*, 355 F.3d 817, 825 (5th Cir. 2003).

B.    *Scope of Judicial Review Under the Controlled Substances Act*

The CSA's judicial review provision provides that "any person aggrieved by a final decision of the Attorney General" may obtain review of "[a]ll final determinations, findings, and conclusions of the Attorney General under this subchapter."  21 U.S.C. § 877.  The Government contends that the CSA's judicial review provision requires, at a minimum, two standing components, one constitutional, which is based on Article III's provision for judicial review of a case or controversy,[3] and the other prudential.[4]  Specifically, the Government argues that Bonds lacks standing because he fails to meet the prudential standing requirements.  It contends that Bonds is not a "person aggrieved" under the CSA because: (1) the alleged injury does not fall within the zone of interests protected or regulated by the CSA; (2) Bonds is not an employer-registrant or waiver applicant; and (3) Bonds cannot raise the legal rights of a third party.  Bonds asserts that he meets the prudential standing

---

[3] U.S. CONST. art. III, § 2, cl.1.

[4] The prudential requirements consist of "judicially self-imposed limits on the exercise of federal jurisdiction," *Allen v. Wright*, 468 U.S. 737, 750–51 (1984), that can be modified or abrogated by Congress, *Bennett v. Spear*, 520 U.S. 154, 162 (1997).

requirements because he is a "person aggrieved" under the CSA's judicial review provision, 21 U.S.C. § 877.

"The phrase 'person adversely affected or aggrieved' is a term of art used in many statutes to designate those who have standing to challenge or appeal an agency decision, within the agency or before the courts." *Dir., Office of Workers' Comp. Programs v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 126 (1995). We have not yet addressed the scope of the term "person aggrieved" under 21 U.S.C. § 877. Because Congress could have, through 21 U.S.C. § 877, expanded judicial reviewability to litigants who do not meet the prudential standing requirements, we look to the Act to determine whether Congress intended the prudential standing doctrine to apply to suits brought under the CSA. *See Assoc. of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 356, 363 (5th Cir. 1999). However, we recognize that "Congress legislates against the background of [the] prudential standing doctrine, which applies unless it is expressly negated." *Bennett v. Spear*, 520 U.S. 154, 163 (1997).

In drafting the CSA, Congress did not expressly expand judicial review to litigants not meeting the prudential standing requirements.[5] Moreover, in the context of the similarly-worded

---

[5] In *Association of Community Organizations for Reform Now v. Fowler*, we held that Congress intended to extend standing under the National Voter Registration Act ("NVRA") to the maximum allowable under the Constitution. 178 F.3d at 363 (5th Cir. 1999). There, we relied on *Federal Election Commission v. Akins*,

judicial review provision in the Administrative Procedure Act ("APA"), the Supreme Court, in *Newport News*, suggested that to be a person aggrieved, the litigant must "show at the outset of the case, that he is injured in fact by agency action and that the interest he seeks to vindicate is arguably within the 'zone of interests to be protected or regulated by the statute' in question."[6] *Id.* at 126-27 (citation omitted).

---

524 U.S. 11 (1998), which acknowledged that the history of the term "aggrieved" indicates Congress's intent to cast the standing net broadly. However, *Fowler* is distinguishable. The NVRA's judicial review provisions provide that a "person who is aggrieved by a violation of th[e] Act may provide written notice of the violation to the chief election official of the State involved" and that, if not corrected within a given time, the "aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation." 42 U.S.C. §§ 1973gg-9(b)(1) & (2). The CSA's wording is closer to the Administrative Procedure Act's ("APA") wording, and the prudential requirements always apply to the APA. Moreover, the NVRA's legislative history, judicial interpretations of the specific language Congress used in the NVRA's private right of action, and the inclusion of a provision for attorneys' fees, all supported the conclusion that Congress intended the NVRA's private-right-of-action provision to eliminate prudential limitations on standing.

[6] Section 702 of the APA, the provision that the Court interpreted in *Newport News*, gives certain persons the right to obtain judicial review of particular agency actions. It provides, in pertinent part, that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702; *see also*, *Dir., Office of Workers' Comp. Programs v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 126 (1995). The Court acknowledged that "[a]s the United States Department of Justice, Attorney General's Manual on the Administrative Procedure Act (1947) put it, 'The determination of who is 'adversely affected or aggrieved ... within the meaning of any relevant statute' has 'been marked out largely by the gradual

-5-

The D.C. Circuit applied *Newport News*, and also reached our conclusion regarding the standing requirements under 21 U.S.C. § 877. In *PDK Laboratories Inc. v. United States Drug Enforcement Administration*, the court stated:

> In view of the interpretation of statutes applicable to other agencies containing language identical to § 877, we hold that if PDK has Article III standing, which no one doubts, and if its interests are "arguably within the zone of interests" § 971(c)(1) regulates, which we believe they are, PDK is a "person aggrieved" within § 877's meaning and is entitled to prosecute its case in court.

362 F.3d 786, 793 (D.C. Cir. 2004)(citing *Newport News*, 514 U.S. 126-27). Therefore, according to *PDK Laboratories*, the term "person aggrieved" merely requires that the litigant have Article III standing and prudential standing—i.e., arguably be within the "zone of interests." We agree with the D.C. Circuit's application of *Newport News* to 21 U.S.C. § 877. Accordingly, because we find that the background understanding of "person aggrieved" includes both the constitutional and prudential limits on standing, we hold that 21 U.S.C. § 877 limits petitions for judicial review to those litigants with Article III standing and who are also arguably within the zone

---

judicial process of inclusion and exclusion, aided at times by the courts' judgment as to the probable legislative intent derived from the spirit of the statutory scheme.'" *Id.* at 127-27 (citation omitted).

-6-

of interests[7] protected by the CSA.

        *C.    Whether Bonds Is A "Person Aggrieved" Under 21 U.S.C. § 877.*

Because we conclude that Bonds meets the Article III standing requirements,[8] our inquiry is whether Bonds has prudential standing.

---

[7] The zone of interest test "is not a test of universal application[,]" *Clarke v. Sec. Indus. Assoc.*, 479 U.S. 388, 399 n.16 (1987), but "because it is the most useful factor in considering Congressional intent on the question of standing, we invoke it as an aid to our decisionmaking today, as we sometimes have in the past." *Corrosion Proof Fittings v. Envtl. Prot. Agency*, 947 F.2d 1201, 1209 n.5 (5th Cir. 1991) (citation omitted).

[8] To meet the constitutionally-compelled injury-in-fact element, Bonds must show (1) he suffered an injury-in-fact, meaning "an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) the injury is fairly traceable to the challenged action of the DEA; and (3) the injury is likely to be redressed by a favorable decision. *Bennett*, 520 U.S. at 167. The DEA's denial of MPP's application for a waiver of the restrictions against hiring Bonds has caused Bonds actual, concrete, and particularized injury by prohibiting him from pursuing his chosen profession as a pharmacist at MPP. The injury also constitutes an invasion of a judicially cognizable interest because we have previously recognized a liberty interest in pursuing a chosen profession. *See Stidham v. Tex. Comm'n on Private Sec.*, 418 F.3d 486, 491 (5th Cir. 2005) ("The Supreme Court has said that 'the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure[,]'" and this court has "confirmed the principle that one has a constitutionally protected liberty interest in pursuing a chosen occupation.)(quoting *Truax v. Raich*, 239 U.S. 33, 41 (1915)). The injury is fairly traceable to the challenged action of the DEA and is likely to be redressed by a favorable decision of this court because MPP's affidavit affirms that MPP offered Bonds employment, and the offer is still open, contingent on the DEA waiving the legal impediment to MPP's hiring Bonds. The pertinent inquiry is, therefore, not whether Bonds incurred an injury in fact, but whether he satisfies prudential

In deciding whether a litigant has prudential standing, we must identify what interest the litigant seeks to assert and then decide if that interest is arguably within the zone of interests to be protected or regulated by the statute.  "Under the 'zone of interests' test, we liberally construe Congressional acts to favor a plaintiff's standing to challenge administrative actions.  This is not to say, however, that all plaintiffs affected by a regulation or order have standing to sue . . . ."  *Corrosion Proof Fittings v. Envtl. Prot. Agency*, 947 F.2d 1201, 1209 (5th Cir. 1991) (citation omitted).[9]  "In cases where the plaintiff is not . . . the subject of the contested regulatory action, the test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit suit."  *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987).

---

considerations.  *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970).

[9] "As a general rule, a person who suffers a legal wrong because of an agency action or who is adversely affected or aggrieved by an agency action within the meaning of a relevant statute is entitled to judicial review of the agency action."  *Bullard v. Webster*, 623 F.2d 1042, 1045 (5th Cir. 1980).  Accordingly, "judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress."  *Morris v. Gressette*, 432 U.S. 491, 501 (1977) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967)).  That said, "[t]he presumption favoring judicial review of administrative action is just that—a presumption."  *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984).

Section 823(b) of the CSA expressly indicates that the interest protected by the regulation's registration requirement is the public's interest in the legitimate use of controlled substances and to inhibit the pernicious consequences to the public's health and safety of illegitimate use. 21 U.S.C. § 823(b) provides:

> (b) The Attorney General shall register an applicant to distribute a controlled substance in schedule I or II unless he determines that the issuance of such registration is inconsistent with the public interest. In determining the public interest, the following factors shall be considered:
> (1) maintenance of effective control against diversion of particular controlled substances into other than legitimate medical, scientific, and industrial channels;
> (2) compliance with particular State and local law;
> (3) prior conviction record of applicant under Federal or State laws relating the manufacture, distribution, or dispensing of such substances;
> (4) past experience in the distribution of controlled substances; and
> (5) such other factors as may be relevant to and consistent with the public health and safety.

Because the language of the CSA specifically states that the Act is meant to protect the public from the deleterious effects of the illegitimate use and distribution of controlled substances, and does not mention the employment rights of pharmacists, Bonds' desire to be employed by MPP is not arguably within the zone of interests protected by the CSA.

Moreover, the Supreme Court, on several occasions, has

-9-

acknowledged that, in drafting the CSA, Congress intended to protect the public from the deleterious effects of the illegitimate use and distribution of controlled substances. For example, in *Gonzales v. Oregon* the Court recognized that Congress drafted the CSA to "combat[] drug abuse and control[] legitimate and illegitimate traffic in controlled substances." 126 S. Ct. 904, 911 (2006). Additionally, in *Gonzales v. Raich*, the Court noted that Congress found that "[t]he illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people." 125 S. Ct. 2195, 2203 n.20 (2005). Finally, considering the CSA, the Court once wrote that "Congress was particularly concerned with the diversion of drugs from legitimate channels to illegitimate channels. It was aware that registrants, who have the greatest access to controlled substances and therefore the greatest opportunity for diversion, were responsible for a large part of the illegal drug traffic." *United States v. Moore*, 423 U.S. 122, 135 (1975) (citations omitted). Hence, Bonds's interest conflicts with the CSA's zone of interests.

Bonds provides no citations to the text or legislative history of the CSA that would support a finding that it was designed, in whole or in part, to protect the interests of a pharmacist in employment. Indeed, the only case on point, *Bzdzuich v. United States Drug Enforcement Administration*, 76 F.3d 738 (6th Cir. 1996),

concludes otherwise. In *Bzdzuich*, a prospective employee and a DEA registered pharmacist petitioned for review of a DEA decision denying the registrant's application for a waiver of 21 C.F.R. § 1301.76(a). *Id.* at 740-41. The Sixth Circuit found that "21 U.S.C. § 823(b), the statute under which 21 C.F.R. § 1301.76(a) was promulgated, was not enacted to protect the employment rights of pharmacists with or without felony drug convictions." *Id.* at 742. Rather, "the interest protected in 21 U.S.C. § 823(b) is the interest of the public in the legitimate use of controlled substances and, by implication, to contain the deleterious consequences to the public's health and safety of illegitimate use." *Id.* Accordingly, the Sixth Circuit stated that the employee's injury was not "within the 'zone of interests' of the statutory provision which form[ed] the basis of his complaint" and he lacked standing to pursue judicial review.[10] We agree that a pharmacist's

<hr>

[10] *Bzdzuich* seemed to contain the alternative holding that, because only an employer-registrant could and did "file[] an application for waiver," the prospective employee could not be a "person aggrieved" under the judicial review provision, 21 U.S.C. § 877. *Bzdzuich v. United States Drug Enforcement Admin.*, 76 F.3d 738, 742 (6th Cir. 1996). Interpreting "person aggrieved" to apply only to applicants for a waiver is inconsistent with the Supreme Court's more expansive interpretation of similar language. *See Akins*, 524 U.S. 11, 19 (1998)("History associates the word 'aggrieved' with a congressional intent to cast the standing net broadly-beyond the common-law interests and substantive statutory rights upon which 'prudential' standing traditionally rested."); *Newport News*, 514 U.S. at 126. *Bzdzuich's* alternative holding is more consistent with the interpretation given to the term "*party* aggrieved" in various judicial review provisions. Courts have construed this term as limiting statutory standing to "one who participated in the

-11-

interest in employment is not arguably within the "zone of interests" protected by the statute.  Accordingly, Bonds is not a "person aggrieved" under 21 U.S.C. § 877.  *See Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984)(rejecting standing for a consumer under the Agricultural Marketing Agreement Act of 1937).  We DISMISS the petition for lack of jurisdiction.[11]

---

agency proceeding." *Ala. Power Co. v. Fed. Commc'n Comm'n*, 311 F.3d 1357, 1366 (11th Cir. 2002); *see Erie-Niagara Rail Steering Comm. v. Surface Trans. Bd.*, 167 F.3d 111, 111-12 (2d Cir. 1999); *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 799 F.2d 317, 334 (7th Cir. 1986); *Am. Trucking Assn's, Inc. v. ICC*, 673 F.2d 82, 84 (5th Cir. 1982) (noting that a right to appeal an agency proceeding is restricted to parties).  However, such an interpretation has not been applied to the term "*person aggrieved.*"  *Simmons v. Interstate Commerce Comm'n*, 716 F.2d 40, 43 (D.C. Cir. 1983).

[11] Bonds also asserts that he has standing because he is asserting the rights of Quinn, a third party.  Generally, a person does not have standing to assert the interests of another, "even when the very same allegedly illegal act . . . affects the litigant [and] a third party." *United States Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1990).  The Supreme Court has "recognized the right of litigants to bring actions on behalf of third parties," provided: (1) the litigant suffered an injury in fact that gave him a sufficiently concrete interest in the outcome of the issue in dispute; (2) the litigant has a close relation to the third party; and (3) there "must exist some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 410-11 (1991). Although Quinn asserts in an affidavit that Bonds is petitioning on his behalf, this affidavit does not suggest that Quinn is unable to protect his own interests. *See Singleton v. Wulff*, 428 U.S. 106, 116 (1976) (noting that where there is a "genuine obstacle" to a person's participation, "absence from court loses its tendency to suggest that his right is not truly at stake . . . and the party who is in court becomes by default the right's best available proponent.").  Accordingly, Bonds may not obtain judicial review based upon the assertion of Quinn's interests.