**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 16, 2009

Charles R. Fulbruge III
Clerk

No. 08-20579

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

$500,000.00 IN U.S. CURRENCY, et al.,

Defendants,

v.

Principal KHIEM NGO; SAVING CALL, L.L.C.,

Claimants-Appellants.

Appeal from the United States District Court for the
Southern District of Texas, Houston Division
USDC No. 4:08-CV-972

Before BENAVIDES, DENNIS, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

After the United States initiated forfeiture proceedings against funds thought to have been involved in illegal activity, several persons claiming to be the funds' rightful owners objected and filed a claim pursuant to 18 U.S.C. § 983. Upon the government's motion, the district court dismissed the claim for lack of standing under the statute. The claimants appealed. We reverse and remand.

I.

Appellant Khiem Ngo owns and manages Saving Call, LLC, a California telephone calling card company. Ngo's brother and sister-in-law, Lan Ngo and Ly Le, operate V247, a Texas company that provides Saving Call with distributing, billing, and collection services, among others. In 2007, the United States seized $500,900 and $110,000 from the residence of Le, Lan Ngo, Mon Mgo, and Man Tran, and $100,000, $496,100, and $500,000 from safe deposit boxes bearing the names of Le, Mgo, and Tran. During the ensuing administrative forfeiture proceedings, Saving Call asserted a claim to the funds, thereby halting their automatic forfeiture. *See* 18 U.S.C. § 983(a)(2)(A) ("Any person claiming property seized in a nonjudicial civil forfeiture proceeding under a civil forfeiture statute may file a claim with the appropriate official after the seizure."); § 983(a)(3)(A) ("Not later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims or return the property pending the filing of a complaint . . . ."). The United States then filed a forfeiture complaint in the United States District Court for the Southern District of Texas, naming the following in-rem defendants: $500,000, $110,000, $100,000, $496,100, and $500,900. After Saving Call filed a verified claim for the funds,[1] the United States filed a motion to dismiss Saving Call's claim for lack of standing, and Saving Call filed a response with evidence. The district court granted the United States' motion and denied Saving Call's motion for reconsideration. Saving Call appeals the district court's standing decision.

---

[1] Ngo filed the claim on behalf of himself and as the representative of Saving Call. We refer to both as Saving Call.

## II.

"This court reviews questions of standing de novo." *Nat'l Athletic Trainers'*
*Ass'n, Inc. v. U.S. Dep't of Health & Human Servs.*, 455 F.3d 500, 502 (5th Cir.
2006). To evaluate the prudential standing requirement at issue here, "we must
identify what interest the litigant seeks to assert and then decide if that interest
is arguably within the zone of interests to be protected or regulated by the
statute." *Bonds v. Tandy*, 457 F.3d 409, 413–14 (5th Cir. 2006). Under Title 18's
civil forfeiture scheme, *see* 18 U.S.C. § 983, only "innocent owner[s]" of seized
property hold the right to defend against forfeiture proceedings. § 983(d)(1) ("An
innocent owner's interest in property shall not be forfeited under any civil
forfeiture statute."). Section 983(d) defines "owner":

> (6) In this subsection, the term "owner"--
>
>> (A) means a person with an ownership interest in the specific
>> property sought to be forfeited, including a leasehold, lien,
>> mortgage, recorded security interest, or valid assignment of
>> an ownership interest; and
>>
>> (B) does not include--
>>
>>> (i) a person with only a general unsecured interest in,
>>> or claim against, the property or estate of another;
>>>
>>> (ii) a bailee unless the bailor is identified and the bailee
>>> shows a colorable legitimate interest in the property
>>> seized; or
>>>
>>> (iii) a nominee who exercises no dominion or control
>>> over the property.

§ 983(d)(6). The question presented to the district court, and now to us, is
whether Saving Call's[2] pleadings and evidence sufficed to present Saving Call

---

[2] The claimant opposing forfeiture bears the burden of establishing standing. *See*
*United States v. $9,041,598.68 (Nine Million Forty One Thousand Five Hundred Ninety Eight*

as an "innocent owner." According to the government, Saving Call asserted only the interest of a general creditor—someone to whom V247 simply owes money as a result of past business dealings—that would fall within the § 983(d)(6)(B)(i) provision for "general unsecured interest[s]." Saving Call responds by arguing that it holds a bailment under Texas law that would fall within the § 983(d)(6)(B)(ii) provision for the interest of a "bailee" who shows a "colorable legitimate interest in the property seized."

Our first task to define the asserted ownership interest, which depends upon state law. *See United States v. $47,875.00 in U.S. Currency*, 746 F.2d 291, 294 (5th Cir. 1984). Texas defines a bailment as "(1) the delivery of personal property from one person to another for a specific purpose; (2) acceptance by the transferee of the delivery; (3) an agreement that the purpose will be fulfilled; and (4) an understanding that the property will be returned to the transferor." *Sears Roebuck & Co. v. Wilson*, 963 S.W.2d 166, 168–69 (Tex. App—Fort Worth 1998, no pet.) (citations omitted); *accord DeLaney v. Assured Self Storage*, 272 S.W.3d 837, 839 (Tex. App.—Dallas 2008, no pet.); *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 635 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). Moreover, if properly asserted, a bailor's interest in bailed property constitutes "an ownership interest in the specific property" so long as it falls within the § 983(d)(6)(B)(ii) provision for situations where "the bailor is identified and the bailee shows a colorable legitimate interest in the property seized." *See also Allright Auto Parks, Inc. v. Moore*, 560 S.W.2d 129, 130 (Tex. Civ. App.—San Antonio 1977, writ ref'd n.r.e.) ("The very essence of a contract of bailment is that after its purpose has been fulfilled the bailed property shall be redelivered to the bailor."); 8A Tex. Jur. 3d Bailments § 16 (West 2009) ("On creation of the ordinary bailment, the general property right remains in the bailor, and the

---

*Dollars and Sixty Eight Cents*), 163 F.3d 238, 245 (5th Cir. 1998).

bailee has only a special interest in the objects of the express or implied bailment. A bailor with legal title to the subject property retains title if the bailment contract does nothing to change that relationship." (footnote omitted)).

Having outlined the contours of the bailment interest that could confer standing, our second task is to determine whether Saving Call sufficiently asserted as much. We conclude that, for purposes of this motion to dismiss, Saving Call's pleadings and evidence succeeded in doing so. First, the pleadings alleged that Saving Call owned the actual seized dollars. The claim itself asserted that the seized money "belong[ed] to Saving Call, LLC," and the response to the government's motion likewise asserted that Saving Call was the "rightful owner" of the properties. The claim also asserted that Saving Call's business was "conducted with cash as opposed to credit card and check payments," and that Saving Call hired V247 to "h[o]ld this money in [its] possession before transferring lump sum amount [sic] to rightful owner, Saving Call."[3]

Second, the evidence Saving Call attached to the response supported the pleadings' allegations. Khiem Ngo's affidavit asserted that V247 was Saving Call's "sole distributor," and provided "accounting, collections, and billing functions." Saving Call also attached a copy of its verified claim from the administrative proceedings, in which Saving Call asserted that Saving Call had "outsourced" its "cash collections" operation to V247. The Ly Le affidavit went much further, and asserted that "V247, Inc. possessed money belonging to Saving Call, L.L.C. which it has a fiduciary responsibility to safe keep and provide to Saving Call, L.L.C." The affidavit asserted that "V247, Inc. is not

---

[3] Likewise, the response to the motion asserts that V247 "collect[ed] Saving Call, LLC's monies and [held] them until they are turned over to Saving Call, LLC." The response also outlined the relationship between the companies and their operators, and asserted that V247 operated as Saving Call's bailee.

permitted nor does it have the right to use Saving Call, L.L.C.'s money," that the money stored at Ly Le's home and the Chase Bank deposit boxes was "money from the business," and that "[t]he money is money V247, Inc. collected for Saving Call L.L.C. in its capacity as the business responsible for Saving Call, L.L.C.'s account receivable, case collections, etc." The affidavit further asserted that the money "was simply being held for Saving Call, L.L.C.," and that "[a]t any time Khiem Ngo, as the owner and Principal Agent of Saving Call, L.L.C. could demand all of the money from V247, Inc." By presenting these pleadings and this evidence, Saving Call established its status as the holder of a qualifying bailment under § 983(d)(6)(B)(ii).

## III.

We hold that Saving Call established its status as a § 983(d) "innocent owner," and that as a result, Saving Call possessed standing to object to the forfeiture of the funds. Accordingly, we REVERSE the judgment of the district court and REMAND the case for further proceedings consistent with this opinion.