**UNITED STATES of America,**
**Plaintiffs,**

v.

**2004 FERRARI 360 MODENO,**
**Defendants.**

**Civil Action No. 4:10–4474.**

United States District Court,
S.D. Texas,
Houston Division.

Nov. 6, 2012.

Albert T. Ratliff, U.S. Attorneys Office, Houston, TX, for Plaintiffs.

### *ORDER*

VANESSA D. GILMORE, District Judge.

Pending before the Court is the claimant Josette Claude's ("Claimant" or "Claude") Claim for Seized Property (**Instrument No. 9**), Plaintiff the United States of America's ("the Government" or "Plaintiff") Motion to Strike Claim for Seized Property (**Instrument No. 13**), and Evens Claude's Claim for Seized Property (**Instrument No. 5**). After a careful review of the pleadings; the motion, responses, and replies; the record; and the applicable law, the Court **DENIES** Claimant's Claim for Seized Property (**Instrument No. 9**), **GRANTS** Plaintiff's Motion to Strike (**Instrument No. 13**), and **DENIES** Evens Claude's Claim for Seized Property.

### *I.*

#### A.

This is a forfeiture action wherein the Government attempted to seize a 2004 Ferrari 360 Modeno with vehicle identification number ZFFYU51A240137976 (the "Defendant *in rem*" or "2004 Ferrari") that was used in connection with a conspiracy to counterfeit money. The claimant, Josette Claude, challenges the forfeiture on the grounds that she has an ownership interest in the 2004 Ferrari and that her ownership interest would be extinguished

if the forfeiture were allowed. The Government, however, argues that Claimant does not have standing to challenge the forfeiture of the 2004 Ferrari because she is not the actual owner of the 2004 Ferrari nor does she have any interest in the 2004 Ferrari sufficient to confer standing. Claimant counters that she has standing to challenge the forfeiture because the statute that authorizes the forfeiture provides innocent owners of property subject to forfeiture, like herself, standing to challenge the forfeiture. Additionally, Claimant's son, Mr. Evens Claude claims that the forfeiture is improper because, at the time the 2004 Ferrari was initially seized, he had not been convicted of any crime.

### B.

On June 18, 2010, Steve Montrose and Evens Claude were arrested for possession of 107 counterfeit United States $100 bills in the Galleria shopping mall in Houston, Texas. Both individuals were subsequently charged by a federal grand jury in the Southern District of Texas with conspiracy to utter counterfeit obligations and securities (count one) and uttering counterfeit obligations and securities (counts two and three). *See United States v. Claude,* Cause No. 4:10–cr–00481. Mr. Claude told Secret Service Agents that he flew to Houston on June 18, 2010, from Philadelphia, PA. (Instrument No. 1, at 1).

When he arrived in Houston, he purchased the 2004 Ferrari. Claimant alleges that all of the funds used to purchase the vehicle were obtained from the sale of a house owned by Josette Claude in Pennsylvania. (Instrument No. 16, at 1). According to Claimant, before Evens Claude left Pennsylvania en route to Houston, she and Mr. Claude agreed that: (1) Evens Claude would purchase the 2004 Ferrari on her behalf and (2) after the purchase, Claimant would retain ownership of the vehicle. (Instrument No. 16, at 1–2).

After buying this car, Mr. Claude drove the car to the Galleria shopping mall, where he was later arrested. At all times he was in possession of the counterfeit $100 bills that were found on him. After Mr. Claude and Mr. Montrose were arrested at the Galleria shopping mall, law enforcement officers found the 2004 Ferrari 360 parked in the shopping mall parking garage. (Instrument No. 1, at 1, 3).

### C.

On November 10, 2010, Plaintiff filed suit, in the United States District Court for the Southern District of Texas, seeking forfeiture against the 2004 Ferrari. In the Complaint, the Government claims that Defendant *in rem* is subject to forfeiture, pursuant to 49 U.S.C. § 80303. Under section 80303, a person may not transport contraband in a vehicle. *See* 49 U.S.C. § 80303. According to the Government, Mr. Claude transported contraband, namely counterfeit money, in the 2004 Ferrari. (Instrument No. 1, at 1–2). Plaintiff seeks a judgment of forfeiture and costs and all other relief to which it may be entitled. *See* (Instrument No. 1, at 5).

On December 13, 2010, Claude filed an Answer wherein she challenged the attempted forfeiture on the basis that the attempted seizure was generally unlawful. *See* (Instrument No. 4, 1–2). On December 21, 2010, Claimant filed a Claim for Seized Property wherein she elaborated on the allegations of impropriety articulated in her Answer. *See* (Instrument No. 9). In the Claim for Seized Property, Claimant contends that she has an ownership interest in the property and is a co-owner, along with Mr. Evens Claude, of the property because she was the co-owner of the proceeds used to purchase the property. (Instrument No. 9, at 1–2).

On December 13, 2010, Mr. Claude also filed a Claim for Seized Property wherein

he claims that the Government's forfeiture is premature and untimely given that at the time Mr. Claude filed the Claim he had not been convicted of any violation of law. *See* (Instrument No. 5). On October 4, 2011, Mr. Claude pleaded guilty to conspiracy to utter counterfeit obligations and securities (count one of the indictment) and uttering counterfeit obligations and securities (count three of the indictment). *See* (E.D. Pa., 2: 11–cr–90–JD, Instrument No. 36). On January 31, 2012, Mr. Claude was sentenced to a term of imprisonment of eighteen months; a three-year term of supervised release; a special assessment of $200.00; and a fine of $5,000. (USDC E.D. Pa., 2: 11–cr–90–JD, Instrument No. 47).

On June 14, 2012, the Government moved to strike Ms. Claude's Answer (Instrument No. 4) and Claim (Instrument No. 9) on the basis that Claude does not have standing to challenge the forfeiture action. *See* (Instrument No. 13, at 1). According to the Government, only innocent owners may contest the seizure of property used in connection with illicit activity. (Instrument No. 13, at 4). The Government argues that Claimant is not an innocent owner because she is not the owner of the 2004 Ferrari. According to the Government, Claimant is nothing more than an unsecured general creditor and therefore cannot qualify as an innocent owner. Accordingly, the Government contends that Claude lacks standing to challenge the seizure. *See* (Instrument No. 13, at 4–5).

On July 25, 2012, Claimant filed a Response to the Government's Motion to Strike. (Instrument No. 16). In the Response, Claimant argues that Mr. Claude negotiated the purchase of the car for Claimant. According to Claimant, both she and Mr. Claude always intended that Claimant would retain ownership of the car. *See* (Instrument No. 16, at 2, 4). As

such, Claimant contends that she has standing to challenge the seizure of the car because she is the actual owner. *Id.* She further contends that she has standing to challenge the seizure because she is an innocent owner.

Claimant argues that she is an innocent owner because she was not involved with the illegal activities giving rise to the initial seizure of the car and she is the owner. First, she claims that she is the owner of the car because the vehicle was purchased as part of a joint-venture between her and Mr. Claude. According to claimant, she and Mr. Claude had an implied agreement to share profits of this purchase (Instrument No. 16, at 6–7). Second, she claims that even if she is merely an unsecured creditor, as the Government contends, she attained that status because she financed Mr. Claude's purchase of the car. According to Claimant, if an unsecured creditor possesses an interest in the specific property subject to forfeiture then she becomes a third-party claimant. Claimant contends that third-party claimants have an ownership interest in the property sufficient to confer standing (Instrument No. 16, at 3–4). Third, she claims she is an owner because she is a bailee with a colorable legitimate interest in the vehicle seized and therefore has an ownership interest in the 2004 Ferrari. According to Claimant, she and Mr. Claude had an implied bailment contract. Under that implied contract, Claimant was the bailee because she delivered funds to Mr. Claude to purchase the 2004 Ferrari and Mr. Claude was the bailor because he accepted the delivery of those funds. Thus, claimant contends that she is a bailee with an ownership interest in the property sufficient to confer standing, *See* (Instrument No. 16, at 4–7).

On August 18, 2012, the Government filed a Reply Claimant's Response to the Government's Motion to Strike. (Instru-

ment No. 17). In the Reply, the Government argues that Claimant is not an innocent owner because she is not an owner and therefore she lacks standing to challenge the forfeiture. First, the Government argues that Claimant is not owner because she is not the actual owner of the property. According to the Government, claimant predicates her claim of actual ownership on the existence of a joint venture between her and Mr. Claude to purchase the car. One of the essential elements of a joint venture, however, is a "joint proprietary interest and right of mutual control." The Government contends that claimant cannot establish this element and therefore she and Mr. Claude did not have a legally valid joint venture. Accordingly, the Government argues that she is not the actual owner of the seized 2004 Ferrari. *See* (Instrument No. 6–8). Second, the Government argues that Claimant is an unsecured general creditor and she is not a third-party claimant because the rule of law upon which Claimant relies is only applicable to criminal forfeiture statutes. This case, however, involves a civil forfeiture statute thus the Government contends that the rule is inapplicable to the facts at hand. *See* (Instrument No. 17, at 1–4). Third, the Government argues that Claimant is not an innocent owner because she is not a bailee. To the extent that there was an actual bailment relationship between Claimant and Mr. Claude, the Government contends that Claimant was the bailor in that relationship not the bailee and therefore does not have sufficient interest to contest the forfeiture. *See* (Instrument No. 17, at 4–6).

On October 19, 2012, the parties appeared for hearing wherein they presented evidence in support of their respective claims. The case is now ripe for consideration.

## II.

The Government seeks to forfeit the Defendant *in rem* pursuant to 49 U.S.C. § 80303. (Instrument No. 1, at 1). In a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property, the Government must establish, by a preponderance of the evidence, that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1). On review, the Court finds that the Government has demonstrated that the property here, the 2004 Ferrari, is subject to forfeiture.

Section 80303 authorizes the Government to "seize a vehicle or [any other] vessel involved in a violation of 49 U.S.C. § 80302." 49 U.S.C. § 80303. Section 80302, in turn, provides that a person may not: (1) transport contraband in a vehicle; (2) conceal or possess contraband in a vehicle; or (3) use a vehicle to facilitate the transportation, concealment, receipt, possession, purchase, sale, exchange, or giving away of contraband. 49 U.S.C. § 80302(b). Section 80302(a) further explains that contraband includes "a forged, altered, or counterfeit coin or an obligation or other security of the United States Government." § 80302(a)(3)(A). At the Forfeiture Hearing, the Government produced testimony that Mr. Claude used the 2004 Ferrari to transport counterfeit monies to the Houston Galleria. Thus, the Court finds that the Government has sufficiently demonstrated that the 2004 Ferrari was used to transport contraband in violation of section 80303. Accordingly, the Court finds that the Government has satisfactorily demonstrated that the 2004 Ferrari is subject to forfeiture.

Claimant, however, contests the forfeiture on the grounds that she has an ownership interest in the 2004 Ferrari, which would be extinguished if the property were forfeited. *See* (Instrument No. 9). The Government counters that Claimant does

not have standing to challenge the forfeiture because she does not have an ownership interest in the property subject to forfeiture. *See* (Instrument No. 13, at 3–6). Thus, the Court must, as a threshold matter, determine whether Claimant has standing to contest the Government's forfeiture.

### A.

As a predicate to any action before a federal court, parties must establish that they have proper standing to raise a claim. *United States v. $9,041,598.68,* 163 F.3d 238, 245 (5th Cir.1998); *accord United States v. One 1998 Mercury Sable,* 122 Fed.Appx. 760, 762 (5th Cir.2004) (unpublished). If there is no party with sufficient interest in the underlying litigation, then "the constitutional limitation of federal court jurisdiction to 'cases or controversies' would prevent a federal court from considering the matter." *United States v. $38,570 U.S. Currency,* 950 F.2d 1108, 1111 (5th Cir.1992); *accord 1998 Mercury Sable,* 122 Fed.Appx. at 762. Standing is, therefore, a threshold determination for the Court. *$38,570 U.S. Currency,* 950 F.2d at 1111. The "claimant opposing forfeiture bears the burden of establishing standing". *United States v. $500,000.00 in United States Currency,* 591 F.3d 402, 405 n. 2 (5th Cir.2009); *United States v. $9,041,598.68,* 163 F.3d at 245; *United States v. One 18th Century Colombian Monstrance,* 797 F.2d 1370, 1374–75 (1986).

A claimant in a forfeiture action need not prove the merit of her underlying claim, but she must be able to show at least a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement and prudential considerations defining and limiting the role of the court. *United States v. $9,041,598.68,* 163 F.3d at 245; *18th Century Colombian Monstrance,* 797 F.2d at 1374–75. To evaluate the prudential standing requirement in a civil forfeiture case, the Court "must identify what interest the litigant seeks to assert and then decide if that interest is arguably within the zone of interests to be protected or regulated by the statute." *$500,000.00 in United States Currency,* 591 F.3d at 404 (quoting *Bonds v. Tandy,* 457 F.3d 409, 413–14 (5th Cir.2006)).

In this case, the litigant claims that she has an ownership interest in the 2004 Ferrari. *See, e.g.,* (Instrument No. 9, at 1). The Court must, therefore, determine whether persons who claim to be owners of the property subject to forfeiture fall within the zone of interests to be protected by the statute. Under 18 U.S.C. § 983(d)(1), an innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. 18 U.S.C. § 983(d)(1); *$500,000.00 in United States Currency,* 591 F.3d at 404–05. Accordingly, the Court finds that a person who challenges a civil forfeiture on the grounds that they are an innocent owner of the property subject to forfeiture falls within the zone of interest to be protected by the civil forfeiture statute and thus has standing to challenge the forfeiture. Applying this rule to the case at hand, if Claimant can show that she qualifies as an innocent owner then she will have standing to contest the forfeiture; if she cannot make that showing, then she does not have standing and her claim must be dismissed.

Again, 18 U.S.C. § 983(d)(1) provides that an innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. § 983(d)(1). The statute defines an innocent owner as an owner who did not know of the conduct giving rise to the forfeiture or an owner who, upon learning of the conduct giving rise to the forfeiture, made reasonable efforts to terminate the use of such property. 18

U.S.C. § 983(d)(2). The statute further explains that owner means:

(A) a person with an ownership interest in the specific property sought to be forfeited, including a leashold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest; and

(B) does not include—

(i) a person with only a general unsecured interest in, or claim against, the property or estate of another;

(ii) a bailee unless the bailor is identified and the bailee shows a colorable legitimate interest in the property seized; or

(iii) a nominee who exercises no dominion or control over the property.

18 U.S.C. § 983(d)(6). The Government claims that Claimant is not an innocent owner because she is not an owner. Specifically, the Government claims that Claimant: (1) is not the actual owner of the 2004 Ferrari and therefore does not qualify as owner; (2) is merely a general unsecured creditor and therefore fails to qualify as an owner; and (3) is a bailor, rather than a bailee, and thus cannot qualify as an owner. *See* (Instrument No. 13).

1.

■ First, Claimant argues that she has an ownership interest in the 2004 Ferrari because she provided all the funds for the purchase of the vehicle. (Instrument No. 16, at 2). The Court disagrees; the 2004 Ferrari is in Mr. Claude's name, Mr. Claude is listed as the owner on the purchase slip, Mr. Claude actually purchased the car, and Mr. Claude was in possession of the car when it was seized. When taken together these facts strongly suggest that Mr. Calude, rather than Claimant, is the owner of the 2004 Ferrari.

Second, Claimant argues that she has an ownership interest in the Defendant *in rem* because she and Mr. Claude were part of a joint-venture. Before the Court turns to the merits of her claim, the Court must first determine whether the existence of the joint-venture is governed by Pennsylvania law or Texas law. Claimant argues that the existence of the joint-venture should be governed by Texas law, but the Government argues that the existence of the joint-venture must be determined in accordance with Pennsylvania law.

■ In this case, the Court exercises federal question jurisdiction over the instant action. When exercising federal question, rather than diversity, jurisdiction, the Court must apply federal common law choice of law principles to resolve any conflict-of-law disputes. *Haynsworth v. The Corporation,* 121 F.3d 956, 962 (5th Cir.1997) (holding, in one of two consolidated cases where jurisdiction was partly based on the presence of a federal question, that "[f]ederal law applies to the [forum selection/choice of law clause] enforceability determination"); *accord Jimenez v. Sun Life Assur. Co.,* 486 Fed.Appx. 398, 406–07 (5th Cir.2012) (unpublished). However, where there is no conflict between the laws of the two forums, then the Court need not determine which law governs. *See DK Joint Venture 1 v. Weyand,* 649 F.3d 310, 314 (5th Cir.2011) (declining to decide whether federal or state law governed equitable estoppel in the arbitration context when there was no conflict between Texas law and federal law).

■ Claimant argues that in Texas, a joint venture must be based upon an agreement, either express or implied. After making this threshold requirement, Claimant further contends that she must also show: (1) a community of interest in the venture, (2) an agreement to share profits, (3) an agreement to share losses, and (4) a mutual right of control or management of the enterprise. *Coastal Plains Dev. Corp. v. Micrea, Inc.,* 572 S.W.2d 285,

287 (Tex.1978). However, the case upon which Claude relies *Coastal Plains* was abrogated by statute in 2009. *Ingram v. Deere*, 288 S.W.3d 886, 894 (Tex.2009). Today, Texas does not recognize a separate "joint venture" entity but has instead categorized all such enterprises as partnership. *Id.* at n. 2. To show a partnership in Texas, Claimant must demonstrate: (1) receipt or right to receive a share of profits of the business; (2) expression of an intent to be partners in the business; (3) participation or right to participate in control of the business; (4) sharing or agreeing to share losses of the business or liability for claims by third parties against the business; and (5) contributing or agreeing to contribute money or property to the business. Tex. Bus. Orgs. Code Ann § 152.052(a) (Vernon 2012); *Ingram v. Deere*, 288 S.W.3d 886, 894 n. 4 (noting that the Texas Business Organization Code applies to all claims filed after Jan 1, 2010). Claimant need not show all five factors but must show some combination of the five in order to prevail.

 In Pennsylvania, a claimant alleging the existence of a joint venture must show: (1) each party to the venture must make a contribution, not necessarily of capital, but by way of services, skill, knowledge, materials or money; (2) profits must be shared among the parties; (3) there must be a joint proprietary interest and right of mutual control over the subject matter of the enterprise; (4) usually, there is a single business transaction rather than a general and continuous transaction. The existence or non-existence of a joint venture depends on the facts and the circumstances of each particular case and no fixed nor fast rule can be promulgated to apply generally to all situations. A joint venture is not a partnership, a tenancy in common; it is an association of parties—of rather recent origin—to engage in a single business enterprise for profit. *McRoberts*

*v. Phelps*, 391 Pa. 591, 138 A.2d 439, 443–444 (1958).

 In this case, the selection of Pennsylvania law over Texas law may be determinative. Texas law no longer formally recognizes a joint-venture corporate form. However, Pennsylvania does. Therefore, there is an actual conflict, which must be resolved. The general rule in forfeiture proceedings is that the law of the jurisdiction that created the property right determines the petitioner's legal interest, while the effect of that property interest, *i.e.* whether it satisfies the requirements of the federal forfeiture statute, is a matter of federal law. *United States v. Lester*, 85 F.3d 1409, 1412 (9th Cir.1996); *United States v. Trafigura AG*, 2008 WL 4057907, at *3–4, 2008 U.S. Dist. LEXIS 65683, at *10–11 (S.D.Tex. Aug. 26, 2008) (Rainey, J.). Here, all the facts giving rise to the "joint venture" occurred before Mr. Claude came to Texas. Claimant alleges that she and Mr. Claude discussed this venture in Pennsylvania and negotiated the terms of the joint-venture in Pennsylvania. Given that Pennsylvania was the situs of the formation, Pennsylvania law creates the rights that give Claimant her legal interest. Moreover, at the Forfeiture Hearing, Claimant also conceded that Pennsylvania law should be used to determine the existence of a joint-venture. Accordingly, the Court finds that Pennsylvania provides the rules of decision in this case.

 Under Pennsylvania law, a claimant alleging a joint-venture must show: (1) each party to the venture must make a contribution, not necessarily of capital, but by way of services, skill, knowledge, materials or money; (2) profits must be shared among the parties; (3) there must be a joint proprietary interest and right of mutual control over the subject matter of the enterprise; (4) usually, there is a single

business transaction rather than a general and continuous transaction. *Phelps*, 138 A.2d at 443. In this case, Claimant cannot show the existence of a joint-venture because she cannot show that she and Mr. Claude had a joint proprietary interest and right of mutual control over the 2004 Ferrari. Proprietary control of the 2004 Ferrari is vested solely in Mr. Claude because he is the legal owner of the car. Given that he, alone, possesses control, Mr. Claude and Claimant could not have formed a joint-venture. *Wilkins v. Heebner*, 331 Pa.Super. 491, 480 A.2d 1141, 1144–45 (1984).

### 2.

The Government next contends that claimant is merely an unsecured creditor, not an owner. *See* (Instrument No. 13, at 5). Under section 983, an unsecured general creditor does not have standing to contest forfeiture. 18 U.S.C. § 983(d)(1); *see also United States v. $47,875.00*, 746 F.2d 291, 291–94 (5th Cir. 1984) (holding that claimants who were unsecured general creditors did not have a recognizable interest in the property subject to forfeiture sufficient to confer standing). This prohibition is premised on the fact that "general creditors are unable to assert interests in specific assets," and therefore they are incapable of asserting "legal rights, titles, or interests in property which has been ordered forfeited." *United States v. BCCI Holdings (Luxembourg), S.A., Bank of Credit and Commerce Int'l, S.A.*, 833 F.Supp. 9, 15 (D.D.C. 1993).

Claimant, however, argues that an unsecured creditor may qualify as a claimant. Relying on *United States v. Reckmeyer*, 836 F.2d 200, 205–06 (4th Cir.1987), Claimant argues that if an unsecured creditor possesses an interest in the specific property being forfeited, she qualifies as a third-party claimant, thereby satisfying the standing requirements. (Instrument

No. 16, at 4). According to claimant, the facts here qualify her for this exception because: (1) she provided Mr. Claude with the money for the 2004 Ferrari and therefore is an unsecured creditor; and (2) the Government is attempting to seize the 2004 Ferrari which is the only asset that Mr. Evens Claude owns. When these two facts are taken in tandem, Claimant argues that she is clearly an unsecured creditor with an interest in the specific property being forfeited and therefore qualifies for the *Reckmeyer* exception.

*Reckmeyer* was a criminal forfeiture case in which the Fourth Circuit determined that a general creditor had standing to contest the forfeiture of the defendant's property when the government attempts to forfeit "virtually all of [the defendant's] assets, both discovered and undiscovered." The defendant in *Reckmeyer* "agreed to forfeit to the United States virtually all of his assets, both discovered and undiscovered," and the government was seeking a criminal forfeiture under 21 U.S.C. § 853 of all of the defendant's assets. *Reckmeyer*, 836 F.2d at 203. The court reasoned that, because this criminal forfeiture involved virtually all of the defendant's assets, a general creditor had standing to contest the forfeiture. *Reckmeyer*, 836 F.2d at 205–06.

Although the claimant has correctly summarized the *Reckmeyer* opinion, the Court nevertheless cannot agree that the claimant qualifies as an owner. First, the Court notes that the *Reckmeyer* decision is not binding on this Court because it is a decision from the Fourth Circuit. This Court has not found, nor have the parties identified, any case in which the Fifth Circuit or the district courts within the Fifth Circuit have adopted the holding of *Reckmeyer*. Moreover, as the Government aptly notes, *Reckmeyer* has not been greeted with universal acceptance. *See United*

*States v. Ribadeneira,* 105 F.3d 833, 836 (2nd Cir.1997) ("We do not intend here to embrace the holding of *Reckmeyer,* which granted standing to unsecured creditors claiming under § 853 where all (as opposed to a part) of the assets of the debtor's estate have been forfeited."); *United States v. BCCI Holdings (Luxembourg), S.A.,* 46 F.3d 1185, 1191–1192 (D.C.Cir. 1995) ("We respectfully disagree with *Reckmeyer.* We think the government is correct that a general creditor can never have an interest in specific forfeited property, no matter what the relative size of his claim vis-a-vis the value of the defendant's post-forfeiture estate.").

Second, and more importantly, *Reckmeyer* was criminal forfeiture proceedings. *See Reckmeyer,* 836 F.2d at 206. The Court has not found, nor have the parties identified any case, in which the Fourth Circuit has extended the *Reckmeyer* holding to civil forfeiture proceedings. In fact, the United States District Court for the Western District of North Carolina has determined that "the criminal forfeiture holding in *United States v. Reckmeyer,* 836 F.2d 200 (4th Cir.1987), that in some circumstances a general unsecured creditor may have a legal ownership interest in specific property" does not apply to civil forfeiture cases. *United States v. 6124 Mary Lane Drive,* 2008 WL 3925074, at *3, 2008 U.S. Dist. LEXIS 64073, at *8 (W.D.N.C. Aug. 20, 2008). This Court agrees. Given that the case before us involves a civil forfeiture pursuant to 49 U.S.C. § 80303, the Court concludes *Reckmeyer* is inapplicable.

Finally, this Court disagrees with the *Reckmeyer* holding. *Reckmeyer* accepted the theory that general creditors have an interest in forfeited property if that property represents their only means of recovery. Thus, under *Reckmeyer* a claimant's standing to contest a forfeiture turns on the size of her claim relative to the value of the wrongdoer's estate. This is problematic because the *Reckmeyer* inquiry would transform forfeiture proceedings into bankruptcy proceedings, such that the court "would not be able to grant forfeiture to the government until it determined that no general creditor would be unable to satisfy its claim against the wrongdoer." *BCCI Holdings (Luxembourg), S.A.,* 46 F.3d at 1191–92. This result is patently at odds with 18 U.S.C. § 983(d)(1). Section 983(d)(1) denies general creditors standing to contest a forfeiture. *Reckmeyer,* however, requires a court to compare the size of the challenging creditor's claim to both the claims of other general creditors and to the size of the wrongdoer's estate. Therefore, a court must evaluate the claims of all the wrongdoer's creditors before the Court can determine whether the creditor challenging the forfeiture qualifies for the *Reckmeyer* exception. Thus, even general creditors not contesting the forfeiture would arguably have some interest in the forfeiture proceeding, because the Court must now evaluate their claims and compare them to the claims of creditor challenging forfeiture. In operation, the *Reckmeyer* rule would effectively erode the section 983(d)(1) prohibition and alter the scheme contemplated by Congress. The Court therefore declines to adopt the *Reckmeyer* rule.

3.

 Under section 983(d), a bailee with a colorable legitimate interest in the property seized may qualify for standing as an innocent owner. § 983(d)(2). In short, a bailment is an express or implied contract wherein the bailor delivers property to the bailee for some purpose and the bailee actual accepts the property. Thus, both delivery and acceptance of the property are essential to the creation of a contractual bailment relationship between parties. However, in an implied bailment,

it is not necessary that delivery and acceptance be formal; in general, knowingly taking property into possession or control is a sufficient acceptance and may suffice to establish an implied bailment. *See* 8a Am Jur. 2d Bailments § 15 (2003).

The Government contends that the claimant does not qualify for standing as an innocent owner because under Pennsylvania law she is not a bailee with a colorable interest in the property seized. (Instrument No. 17, at 4). The claimant argues that under Texas law she and her son had an implied bailment contract which qualifies her as an innocent owner. *See* (Instrument No. 16, at 5–6).

Before the Court turns to the merits, the Court must first determine whether the existence of the bailment relationship is governed by Pennsylvania law or Texas law. The claimant argues that the existence of a bailment relationship should be governed by Texas law, the Government argues that the existence of the bailment relationship should be dictated by Pennsylvania law. As discussed above, in this case, the Court exercises federal question jurisdiction over the instant action. When exercising federal question jurisdiction, the Court must apply federal common law choice of law principles to resolve any conflict-of-law disputes. *Haynsworth*, 121 F.3d at 962. However, where there is no conflict between the laws of the two forums, then the Court need not determine which law governs. *See DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 314 (5th Cir. 2011).

▆▆▆ In Texas, the elements of a bailment are: (1) the delivery of personal property from one person to another for a specific purpose; (2) an acceptance by the transferee of such delivery; (3) an agreement that the purpose will be fulfilled; and (4) an understanding that property will be returned to transferor or dealt with as the transferor directs. *State v. $281,420.00 in*

*United States Currency*, 312 S.W.3d 547, 551 (Tex.2010). In order to demonstrate the existence of such a relationship, the claimant must present evidence showing that the person "sought to be charged as a bailee knew he was assuming such relationship." *Hoye v. Like*, 958 S.W.2d 234, 237 (Tex.App.-Amarillo 1997, no pet.); *Smith v. Radam*, 51 S.W.3d 413, 417–18 (Tex.App.-[1st Dist.] Houston 2001, no pet.). Stated otherwise, the claimant must show that the bailee knowingly took the property into possession or control. *$281,420.00 in United States Currency*, 312 S.W.3d at 551.

▆▆▆ In Pennsylvania, the elements of a bailment are: A bailment is a delivery of personalty for the accomplishment of some purpose upon a contract, express or implied, that after the purpose has been fulfilled, it shall be redelivered to the person who delivered it, otherwise dealt with according to his directions or kept until he reclaims it. *Smalich v. Westfall*, 440 Pa. 409, 269 A.2d 476, 480 (1970); *accord Price v. Brown*, 545 Pa. 216, 680 A.2d 1149, 1151–52 (1996); *Pyeritz v. Commonwealth*, 32 A.3d 687, 696 (Pa.2011). As the Pennsylvania Superior Court stated in *Lear, Inc. v. Eddy*, 2000 PA Super 97, 749 A.2d 971 (Pa.Super.Ct.2000), a contract for bailment—express or implied—must be based on the agreement or the conduct of the parties. A contract for bailment may be implied where "the natural and just interpretation of the acts of the parties warrants such a conclusion." *Eddy*, 749 A.2d at 973.

Neither party has argued that the existence of a bailment relationship turns on the application of the law of one forum over the other. As such, the Court finds that it need not resolve the conflict because the application of Texas law over Pennsylvania law would not be outcome determinative. *See Hininger v. Case*

*Corp.* 23 F.3d 124, 126 (5th Cir.1994) (explaining that, where all potentially applicable states' laws do not differ in material respect, the claimed conflict is a "false conflict"); *accord Kevin M. Ehringer Enters. v. McData Servs. Corp.*, 646 F.3d 321, 326 n. 2 (5th Cir.2011); *see also Del Bosque v. AT & T Adver., L.P.*, 441 Fed.Appx. 258, 261 n. 3 (5th Cir.2011) (unpublished) ("We also note, however, that neither side has argued that this case would come out differently under federal law than under Texas law. Accordingly, the conflict is a false conflict."). Accordingly, the Court need not decide whether to apply Texas or Pennsylvania law because, as discussed in greater detail below, the choice of law does not affect the outcome of this case. *Weyand*, 649 F.3d at 314.

■■■ Claimant alleges that she and Mr. Claude have a bailment relationship because "Josette Claude delivered the funds to buy the vehicle for future investment purposes. Evens Claude accepted delivery of those funds. Both she and Evens Claude agreed that the purpose would be fulfilled. The understanding between both was that the funds used to purchase the vehicle would be returned to Ms. Claude upon the resale of the vehicle." (Instrument No. 16, at 5–6). On these facts, Ms. Claude would be considered a bailor rather than a bailee under both Texas and Pennsylvania law. *See $281,420.00 in United States Currency*, 312 S.W.3d at 551 (In Texas, a bailment involves the "delivery of personal property from one person, the bailor, to another, the bailee."); *Price*, 680 A.2d at 1152 (Pennsylvania case characterizing a bailor a person who delivers property to be entrusted in the care of the bailee). Accordingly, the claimant is bailor rather than a bailee. Because she is a bailor rather than a bailee, she cannot qualify as a bailee with a colorable legitimate interest in the property under the innocent owner statute. Moreover, under either Texas or Pennsylvania law, the bail-

ment relationship between Claimant and Mr. Evens was terminated after he used the delivered funds to purchase the 2004 Ferrari. As such, there is no currently existing bailment relationship upon which Claimant may predicate her claim that she is a bailee.

**B.**

The claimant has argued forcefully that she qualifies as an innocent owner and therefore has standing sufficient to challenge the forfeiture of the 2004 Ferrari. On review, the Court disagrees. Contrary to the claimant's arguments, Claude is neither a party to a joint-venture nor does the size of her claim against Mr. Claude relative to the size of his estate transform her from a general unsecured creditor to a third-party claimant nor is she a bailee with a colorable legitimate interest in the property. Accordingly, she is not an innocent owner and therefore does not have standing to challenge the proposed forfeiture. Accordingly, the Government's Motion to Strike is **GRANTED.**

**III.**

Mr. Evens Claude also filed a Claim for Seized Property wherein he claims that the Government's forfeiture is premature and untimely given that at the time Mr. Claude filed the Claim he had not been convicted of any violation of law. *See* (Instrument No. 5). On October 4, 2011, Mr. Claude pleaded guilty to conspiracy to utter counterfeit obligations and securities (count one of the indictment) and uttering counterfeit obligations and securities (count three of the indictment). *See* (E.D. Pa., 2: 11–cr–90–JD, Instrument No. 36). On January 31, 2012, Mr. Claude was sentenced to a term of imprisonment of eighteen months confinement. (USDC E.D. Pa., 2: 11–cr–90–JD, Instrument No. 47).

Given that Mr. Claude has been convicted of conspiracy to utter counterfeit obligations and the utterance of counterfeit obligations, his objection to the forfeiture, as stated in his Claim for Seized Property, is no longer valid. The Court further finds that Mr. Claude is not an innocent owner and therefore has no basis upon which to now challenge the seizure of the 2004 Ferrari. Accordingly, his Claim must be **DENIED.**

### *IV.*

For the foregoing reasons, Claimant's Claim for Seized Property (**Instrument No. 9**) should be **DENIED** and the Government's Motion to Strike should be **GRANTED (Instrument No. 13).**

The Clerk shall enter this Order and provide a copy to all parties.