# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 06-1983

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Real Property Located at 3234 | * | Appeal from the United States |
| Washington Avenue North, | * | District Court for the |
| Minneapolis, Minnesota, | * | District of Minnesota. |
| | * | |
| Defendant, | * | |
| | * | |
| Minnesota Church of Angels, | * | |
| | * | |
| Claimant - Appellant. | * | |

_____

Submitted: November 13, 2006
Filed: March 22, 2007

_____

Before LOKEN, Chief Judge, LAY[*] and MELLOY Circuit Judges.

_____

LOKEN, Chief Judge.

---

[*]The HONORABLE DONALD P. LAY assumed permanent disability retirement status on January 3, 2007. This opinion is being filed by the remaining judges of the panel pursuant to 8th Cir. R. 47E.

The United States seeks civil forfeiture of real property in Minneapolis that has served as the clubhouse for the Minnesota chapter of the Hell's Angels Motorcycle Club (the "Club") since 1995. As relevant here, the government alleges that the property is subject to forfeiture because it has been "used . . . to commit, or to facilitate the commission of, a [federal drug offense] punishable by more than one year's imprisonment." 21 U.S.C. § 881(a)(7). The property's record owner, the Minnesota Church of Angels (the "Church"), is a non-profit organization formed by the Club's organizers to buy and hold clubhouse property. The parties agree that, for purposes of this litigation, the Church and the Club are indistinguishable.

The Church timely filed a claim asserting its ownership interest and contesting the government's right to forfeit the property. See 18 U.S.C. § 983(a)(4). The district court granted the government's motion for summary judgment. The Church appeals. In forfeiture cases, as in other civil cases, we review the grant of summary judgment de novo. See United States v. Premises Known as 7725 Unity Avenue North, Brooklyn Park, Minnesota, 294 F.3d 954, 956 (8th Cir. 2002). The government's motion was based in large part on testimony of interested witnesses that was contradicted, in essential respects, by testimony of other witnesses submitted by the Church. As that conflict created genuine issues of material fact, we reverse.

Congress significantly modified civil forfeiture procedures in the Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202 (2000) ("CAFRA"). Under CAFRA, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). When the government claims that property is subject to forfeiture because it "was used to commit or facilitate the commission of a criminal offense," as in this case, CAFRA provides that "the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). The term "facilitate" encompasses "activity making the prohibited conduct less difficult or 'more or less free from obstruction or hindrance.'" United

States v. Premises Known as 3639-2nd St., N.E., Mpls., Minn., 869 F.2d 1093, 1096 (8th Cir. 1989). If the government satisfies this burden of proof, then the claimant must prove an affirmative defense to forfeiture, such as the "innocent owner defense" codified in 18 U.S.C. § 983(d), or that the forfeiture constitutes an excessive fine, see United States v. Dodge Caravan Grand SE/Sport Van, 387 F.3d 758, 762-64 (8th Cir. 2004). In this case, the central issue is whether the government's showing of substantial connection was sufficient to warrant summary judgment in its favor.

In 2003, Patrick Matter and Richard Rohda pleaded guilty to federal drug offenses and agreed to cooperate with the government to earn reduced sentences. Matter was president of the Club from 1982 to 2003 and an incorporator of the Church in 1995. Rohda was a ten-year Club member who rose to the rank of "road captain." The summary judgment record includes excerpts of testimony by Matter and Rohda to a grand jury in August 2003; at the criminal trial of Paul Seydel, a witness for the Church, in the fall of 2004; and at March 2005 depositions.

Matter and Rohda testified that substantial quantities of methamphetamine were frequently delivered to members at the clubhouse, that drugs were routinely used by members during parties at the clubhouse, and that workmen who engaged in the 1995 remodeling of the clubhouse were often paid, at least in part, with methamphetamine. Matter testified that members' drug trafficking was discussed at the clubhouse on a monthly basis. Rohda testified that drugs were constantly present and used at the clubhouse. The government submitted other testimony supporting this evidence of widespread illegal drug activity at the clubhouse. Non-members Jacob Dailey and Christopher Tolck testified that they saw members using methamphetamine and cocaine at the clubhouse. Two workers, James Flett and Joseph Pitino, testified that drugs were used to pay for clubhouse renovation work. Pitino further testified that he consumed lines of cocaine at the clubhouse bar with a prospective member on one occasion and received cocaine at a clubhouse party on another. In a 2001 warrant

search of the clubhouse, police found .75 grams of methamphetamine sitting on a table in front of member William Folsom.

We have no doubt that this evidence, if credited by the finder of fact, would satisfy the government's burden to prove a "substantial connection" between the Church's clubhouse property and violations of the federal drug laws punishable by more than one year's imprisonment. Under prior law, the government needed only to show probable cause to believe that property was subject to forfeiture to shift the burden of proof on this issue to the claimant.[1] In this forfeiture-friendly environment, summary judgment in favor of the government was not uncommon. See, e.g., One Blue 1977 AMC Jeep CJ-5 v. United States, 783 F.2d 759 (8th Cir. 1986). But the summary judgment inquiry depends on "the substantive evidentiary standard of proof that would apply at the trial on the merits." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). CAFRA shifted the burden of proof to the government. When the party with the burden of proof moves for summary judgment, "the standard is more stringent." Nat'l State Bank v. Fed. Reserve Bank of N.Y., 979 F.2d 1579, 1582 (3d Cir. 1992).

Though the burden of proof is relevant, the same principles apply when either party moves for summary judgment. "Once the movant has supported his or her motion . . . the opponent . . . may not simply rest on the hope of discrediting the movant's evidence at trial." Matter of Citizens Loan & Sav. Co., 621 F.2d 911, 913 (8th Cir. 1980); see generally Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986) (a principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims *or defenses*") (emphasis added). We agree with other circuits that CAFRA did not modify this summary judgment principle. "That the burden is on the

---

[1]Probable cause in this context was "a reasonable belief of guilt . . . supported by more than a mere suspicion but less than prima facie proof." United States v. Ninety One Thousand Nine Hundred Sixty Dollars ($91,960), 897 F.2d 1457, 1462 (8th Cir. 1990).

government does not change the fact that, if the government meets its burden, it will prevail unless the claimants introduce evidence to support their case." United States v. $174,206.00 in U.S. Currency, 320 F.3d 658, 662 (6th Cir. 2003); accord United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars ($30,670), 403 F.3d 448, 463 (7th Cir. 2005). Therefore, even with the burden of proof on the government, if its evidence that the property is subject to forfeiture was not materially refuted, summary judgment was proper because the Church does not argue that it made an adequate showing of an affirmative defense.

The difficulty here is that the government's summary judgment evidence did not go unrefuted. The Church submitted deposition testimony of Club members William Test and Paul Seydel, and affidavits by member Hans Brenner and non-member Jerry Schiro. Test, the Church's treasurer since 1995, testified that he never saw drugs used or exchanged at the clubhouse at any time. Seydel, a founding Club member, testified that he never saw drugs used or shared at the clubhouse. Seydel explained that his drug conspiracy conviction resulted when Pat Matter twice gave Seydel methamphetamine to satisfy debts, exchanges which took place at Matter's motorcycle shop, not at the clubhouse. Brenner averred that he did most of the electrical work during the clubhouse renovation, never heard of a worker being paid with drugs, and never saw drugs at the clubhouse. Schiro's affidavit tended to impeach the testimony of his stepson, Jacob Dailey, that Dailey saw a large quantity of methamphetamine during one of his many visits to the clubhouse.

The district court granted the government's motion for summary judgment on the ground that the Church's evidence did not adequately refute the government's evidence of a substantial connection between drug trafficking and the clubhouse. The court concluded that Seydel and Test did not create a genuine issue of material fact as to whether Matter distributed methamphetamine at the property. Because Seydel and Test admitted they had "limited contact" with the clubhouse, the property could still have been used for drug transactions and drug use even if they did not personally

witness such activity. Similarly, Brenner's testimony that he was not paid in drugs did not refute the evidence that other workers were. In other words, even if everything the Church's witnesses said was true, the clubhouse could still have been the site of the large-scale drug activities to which Matter, Rohda, and others testified. The court summarily rejected the Church's attack on the credibility of these government witnesses on the ground that a court must not weigh the evidence or make credibility determinations in ruling on a motion for summary judgment.

We do not agree with this analysis. The burden of proof is particularly relevant when the party with the burden of proof moves for summary judgment and the opposing party presents evidence contesting the veracity of the movant's evidence. In this situation, if the testimony of a witness (as opposed to documentary evidence) is necessary to carry the movant's burden of proof, we look carefully at whether the witness is unbiased and competent, and whether his testimony is "positive, internally consistent, unequivocal, and in full accord with the documentary exhibits." Lundeen v. Cordner, 354 F.2d 401, 408 (8th Cir. 1966). If the movant makes this showing, then the opposing party cannot force a trial merely to cross-examine the witness or in the hope "that something might turn up at the trial." Id.; see 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2726, at 444-45. But "where specific facts are alleged that if proven would call the credibility of the moving party's witness into doubt, summary judgment is improper," especially when the challenged testimony "is an essential element of the plaintiff's case." Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc., 831 F.2d 77, 81 (8th Cir. 1987); see Sartor v. Arkansas Gas Corp., 321 U.S. 620, 626-28 (1944). Indeed, if the credibility of a critical *interested* witness is even partially undermined in a material way by the non-moving party's evidence, summary judgment in favor of the party with the burden of proof should be denied. See Chem. Bank v. Hartford Acc. & Indem. Co., 82 F.R.D. 376, 378-79 (S.D.N.Y. 1979).

In this case, we agree that the Church's member witnesses -- Test, Seydel, and Brenner -- could not from their own personal knowledge refute all the testimony by

the government's witnesses of substantial on-going drug activity at the clubhouse. Thus, the government will still prevail on the subject-to-forfeiture issue if this unrefuted testimony is found credible. But the Church's evidence put the overall credibility of the government's witnesses squarely at issue:

> -- Matter testified that he delivered methamphetamine to Paul Seydel at the clubhouse ten or twenty times. Seydel denied that accusation.

> -- Matter testified that he paid William Test $500 per pound to store methamphetamine for Matter. Test denied that accusation.

> -- Matter testified that Seydel and Test were aware that Matter delivered methamphetamine to other members at the clubhouse. Seydel and Test denied that accusation.

> -- Seydel and Test contradicted Rohda's grand jury testimony that "[t]here's always drugs at the clubhouse" being used "in the open."

> -- Dailey testified that he went to the clubhouse with his dad "[o]ff and on when I wasn't in jail" and once saw a half pound of methamphetamine on the bar being consumed by members. Schiro's affidavit impeached both this testimony and Dailey's general credibility.

These are not minor inconsistencies. They are direct contradictions on points materially related to the government's proof of a substantial connection. If a jury believed the Church's witnesses on these points, it could reasonably discredit *all* of the testimony of Matter, Rohda, and Dailey. Moreover, the government's key witnesses are neither disinterested nor inherently credible. Convicted of serious drug crimes, they have a strong incentive to win the government's support for reducing their sentences. In these circumstances, the governing principle that a court may not weigh the evidence or resolve credibility issues means that summary judgment must be denied, not granted.

With the credibility of the government's key witnesses in issue, support for the motion for summary judgment is reduced to the government's one piece of objective evidence, the .75 grams of methamphetamine found in the clubhouse during a warrant search. In considering this evidence, we must bear in mind that the claimant is an institution, not one or more individuals. The few reported forfeiture cases involving institutional claimants suggest, logically in our view, that agency principles should govern determination of the innocent owner defense. See United States v. One Parcel of Land Located at 7326 Highway 45 N., 965 F.2d 311, 316-18 (7th Cir. 1992); cf. United States v. One 1989 Jeep Wagoneer, 976 F.2d 1172, 1176 (8th Cir. 1992). Agency principles are likewise relevant in determining whether one member's possession of a user quantity of methamphetamine proves a substantial connection between the institutional claimant's real property and drug trafficking.

Here, the government's witnesses testified that the clubhouse was acquired and fortified to create a safe haven for Club members' illegal drug trafficking and use. If that testimony is credible, the property should clearly be forfeited. But many legitimate non-profit institutions own real property, and it is not unrealistic to posit an institutional owner's otherwise innocent premises being used for illicit drug trafficking by agents misusing their right of access and authority. CAFRA should be construed in a manner that protects such institutions from unwarranted or disproportionate forfeitures. Thus, while one seizure of a small quantity of an illegal drug at the clubhouse supports the government's forfeiture case, it does not by itself justify summary judgment forfeiting the property. See Premises Known as 3639-2nd St., 869 F.2d at 1098 (R. Arnold, J., concurring) ("the *quality* of the relationship between the property and the crime must be substantial").

The judgment of the district court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion. The Church's motion to strike portions of the government's brief is denied.

_____