# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1743

_____

United States of America

*Plaintiff - Appellee*

v.

Eleven Million Seventy-One Thousand One Hundred and Eighty-Eight Dollars and Sixty-Four Cents ($11,071,188.64) in United States Currency, More or Less, Seized from LaOstriches & Sons, Inc.

*Defendant*

------------------------------

Laura Avila Barraza; LaOstriches and Sons, Inc.

*Claimants - Appellants*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 12, 2016
Filed: June 6, 2016

_____

Before LOKEN, GRUENDER, and KELLY, Circuit Judges.

_____

LOKEN, Circuit Judge.

In December 2012, the United States filed an Amended Verified Complaint seeking civil forfeiture of $11,071,188.64 held in various banking and brokerage accounts in the United States by LaOstriches & Sons, Ltd. ("LaOstriches"), on the ground that the funds were money-laundered drug trafficking proceeds. See 18 U.S.C. §§ 981(a)(1)(A), 1956(a)(1)(B), 1957. LaOstriches, Laura Avila-Barraza, and Avila-Barraza's three children filed claims to the property, asserting they are innocent owners of the funds and other defenses to the government's claim. See 18 U.S.C. §§ 983(a)(4) and (d). After protracted pretrial proceedings, the district court[1] dismissed LaOstriches's claim due to repeated failures to comply with orders that its corporate treasurer and secretary appear for discovery depositions.[2] After further proceedings, the court granted summary judgment, dismissing Avila-Barraza's claim because she failed to establish a sufficient interest in the seized property. LaOstriches and Avila-Barraza appeal both rulings. We affirm.

## I. Background.

The funds were seized in April 2012 from two LaOstriches brokerage accounts at Wells Fargo Advisors in Miami. The government venued its forfeiture claim in the Eastern District of Missouri because security transactions in those accounts were cleared through a brokerage service headquartered in St. Louis. Avila-Barraza incorporated LaOstriches in the British Virgin Islands on the advice of family members and other advisors after the 1998 murder of her husband, Humberto Ojeda-Barraza, a resident of Sinaloa, Mexico. Avila-Barraza is LaOstriches's president and sole shareholder. Her sister, Griselda Avila-Barraza, serves as corporate secretary,

---

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

[2]Prior to the court's ruling, Avila-Barraza's children, who also did not appear for scheduled depositions, withdrew their claims for lack of standing. The children do not appeal the court's dismissal of their claims.

and her father, Jose Sergio Avila-Amezquita, serves as corporate treasurer. Avila-Barraza alleges that the funds are the proceeds of the inheritance from her husband, invested through LaOstriches for the benefit of her children.

The government does not contest Avila-Barraza's claim that the funds are proceeds derived from her inheritance. But, the government contends, the funds were initially provided to LaOstriches by Timber Development, Ltd., a British Virgin Islands investment company created by Jorge Cifuentes-Villa to launder the proceeds of his family's drug trafficking organization, which supplied cocaine to the Sinaloa drug cartel in Mexico. Cifuentes-Villa was close friends with Avila-Barraza's husband before his death. From 2001 to 2012, the government alleges, Timber Development and LaOstriches traded millions of dollars between their various banking and brokerage accounts.

## II. LaOstriches's Appeal.

In July 2013, the government noticed depositions of Avila-Barraza, her children, and LaOstriches's corporate secretary and treasurer. The depositions were rescheduled at claimants' request for the week of September 16. On September 5, claimants moved for protective orders canceling the depositions. When the district court denied that motion, claimants other than Avila-Barraza moved for emergency protective orders, arguing the orders were necessary given their lack of personal knowledge of the relevant events and the unduly burdensome nature of the depositions. The government moved to compel their appearances. The district court denied the claimants' motions and granted the government's motion to compel. The deponents failed to appear.

In October 2013, the government moved for an order to show cause why claimants' claims and answers should not be stricken for failure to comply with discovery orders. The district court denied the motion. Noting that "dismissal is an

-3-

extreme sanction that should be used prudently," the court instead provided claimants "one *final* opportunity to comply with the discovery orders and appear for depositions." The court cautioned that it "will not accept any further excuses or explanations for failure to attend depositions." The orders stated in bold and underlined text: "**Claimants are warned that failure to appear for depositions will result in the dismissal of their individual claims along with any additional sanctions the Court deems appropriate.**" The parties then rescheduled the depositions for December 13 through December 18. Only Avila-Barraza appeared and was extensively deposed.

The government moved for dismissal of the claims by LaOstriches and Avila-Barraza's children (the children then withdrew their claims). The district court dismissed LaOstriches's claim. Again rejecting proffered excuses for failure to comply, the court found that "the extreme sanction of striking [LaOstriches's] claims and answers is warranted" because LaOstriches "obstructed discovery" when it "willfully disobeyed" three separate orders directing its corporate officers to attend properly noticed depositions. LaOstriches sought reconsideration, which the court denied in a detailed Memorandum and Order, explaining that "[t]he continued failure of LaOstriches to produce their corporate [treasurer and secretary] that were properly noticed for deposition by the government is sufficient to show that any other sanction would be ineffective."

On appeal, LaOstriches argues the district court abused its discretion by striking its claim and answer due to repeated failures to comply with discovery orders. The Federal Rules of Civil Procedure expressly authorize sanctions for failure to comply with a court's discovery order, including striking pleadings or dismissing an action in whole or in part. See Fed. R. Civ. P. 37(b)(2)(A)(iii), (v). We review Rule 37 sanctions for abuse of discretion. See St. Louis Produce Mkt. v. Hughes, 735 F.3d 829, 832-33 (8th Cir. 2013). As the district court recognized, dismissal is an extreme sanction that should be applied "only where there is an order compelling

discovery, a willful violation of the order, and prejudice to the other party." Hughes, 735 F.3d at 832; see Hairston v. Alert Safety Light Prods., Inc., 307 F.3d 717, 719-20 (8th Cir. 2002). "[B]efore dismissing a case under Rule 37(b)(2) the court must investigate whether a sanction less extreme than dismissal would suffice, *unless* the party's failure was deliberate or in bad faith." Comstock v. UPS Ground Freight, Inc., 775 F.3d 990, 992 (8th Cir. 2014) (quotation omitted).

Here, the district court issued three discovery orders directing LaOstriches to appear for scheduled depositions through its corporate officers. When given one last chance to comply, Avila-Barraza attended her long-delayed deposition, but the other corporate officers -- members of Avila-Barraza's immediate family -- willfully and deliberately failed to attend. LaOstriches admitted that it "knew prior to scheduling and prior to making many representations to the [government] that neither the corporate secretary nor treasurer would appear for the depositions." Before striking LaOstriches's claim and answer, the district court explained that failure to attend the December depositions would be "bad faith conduct." LaOstriches's assertion that the government failed to establish bad faith is without merit. Its repeated flaunting of the court's unambiguous orders demonstrated bad faith.

LaOstriches argues that the government was not prejudiced by the failure of its "nominal officers" to appear for their properly scheduled depositions because they "had no personal knowledge of the business affairs of LaOstriches." In general, "[t]he sworn testimony of a party . . . will hardly ever be so irrelevant that it should be dispensed with on that party's mere say-so." In re O'Brien, 351 F.3d 832, 839 (8th Cir. 2003). That is particularly true in this case. To establish its forfeiture claim, the government sought to prove that the proceeds of unlawful drug trafficking were transferred to LaOstriches in financial transactions designed to conceal "the source, the ownership, or the control of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i). The testimony of LaOstriches's corporate officers was clearly relevant to these issues, and to its assertion of the innocent owner defense, even if --

-5-

perhaps particularly if -- these family members disclaimed all knowledge of the initial source of LaOstriches's corporate assets. See 18 U.S.C. §§ 981(k)(2), 984(a)(1). As these individuals resided outside the country and could not be subpoenaed for trial, the district court correctly concluded that LaOstriches's continued failure to produce its corporate secretary and treasurer officers for depositions reflected its refusal to participate in discovery and was "sufficient to show that any other sanction would be ineffective."

LaOstriches further argues that it should not suffer the "ultimate sanction" of dismissal for discovery violations that were the fault of claimants' prior attorney, not his clients. This contention is without merit. "[T]his court follows the well-established principle that a party is responsible for the actions and conduct of [its] counsel and that, under appropriate circumstances, dismissal or default may be entered against a party as a result of counsel's actions." Everyday Learning Corp. v. Larson, 242 F.3d 815, 817 (8th Cir. 2001) (quotation omitted). Though dismissal is a harsh Rule 37 sanction, it is entrusted to the district court's sound discretion. "Thus, even if this Court would have imposed a less onerous sanction, we cannot substitute our judgment for that of the [District] Court, and we limit our review to whether the evidence supports the chosen sanction." In re O'Brien, 351 F.3d at 839. There was no abuse of discretion. We decline to take up the question of the prior attorney's alleged misconduct.

Finally, LaOstriches argues for the first time on appeal that the district court violated the Excessive Fines Clause of the Eighth Amendment by striking its claim and answer, effectively levying an $11 million fine. There was no error, much less plain error, in the district court's failure to consider this issue *sua sponte*. It is true that the forfeiture of property pursuant to a civil *in rem* statute which provides an innocent owner defense is "a payment to a sovereign as punishment for some offense" and is therefore "subject to the limitations of the Eighth Amendment's Excessive Fines Clause." Austin v. United States, 509 U.S. 602, 622 (1993), quoting Browning-

Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 265 (1989). However, the district court order merely struck LaOstriches's claim that it was an innocent owner of funds the government sought to have forfeited. This was not a forfeiture order, and it did not extract a payment "as punishment for some offense." The order simply terminated LaOstriches's participation in a civil proceeding to determine whether the funds should be forfeited because of its willful, bad faith Rule 37 discovery violations. That Avila-Barraza, the remaining claimant, was ultimately unsuccessful in defeating the government's forfeiture claim did not convert the order dismissing LaOstriches's claim into punishment that was subject to the Eighth Amendment's Excessive Fines Clause. Cf. United States v. Union Bank for Sav. & Invest. (Jordan), 487 F.3d 8, 22-23 (1st Cir. 2007).

### III. Avila-Barraza's Appeal.

Two months after the dismissal of LaOstriches's claim, the government moved for summary judgment dismissing Avila-Barraza's individual claim. On February 13, 2015, the district court granted summary judgment. Under the Civil Asset Forfeiture Reform Act of 2000, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). "If the government satisfies this burden of proof, then the claimant must prove an affirmative defense to forfeiture, such as the 'innocent owner defense' codified in 18 U.S.C. § 983(d)." United States v. 3234 Wash. Ave. N., 480 F.3d 841, 843 (8th Cir. 2007). We review the grant of summary judgment in forfeiture cases *de novo*. Id. at 842. The district court granted summary judgment on alternative grounds because Avila-Barraza failed to establish an ownership interest in the seized property "either for Article III standing or for an innocent owner defense." We disagree with the first reason but agree with the second.

**A.** The district court first granted summary judgment on the ground that Avila-Barraza lacked Article III standing. To establish Article III standing to challenge a

civil forfeiture complaint, a claimant must show "a sufficient ownership interest in the property to create a case or controversy capable of federal judicial resolution. Ownership interest can be shown by actual possession, control, title, and financial stake." United States v. 7725 Unity Ave. N., 294 F.3d 954, 956 (8th Cir. 2002). "To have standing, a claimant need not prove the underlying merits of the claim. The claimant need only show a colorable interest in the property, redressable, at least in part, by a return of the property." United States v. One Lincoln Navigator 1998, 328 F.3d 1011, 1013 (8th Cir. 2003) (quotation omitted). The First Circuit has characterized this "colorable" requirement as "very forgiving." Union Bank, 487 F.3d at 22. Ownership interests are typically defined by the applicable state law.

The government argued, and the district court agreed, that Avila-Barraza lacks Article III standing because she failed to establish her claim that she is the *owner* of LaOstriches's corporate funds as the beneficiary of a resulting trust under Missouri or Florida law. But that analysis improperly conflates standing with the merits of Avila-Barraza's claim that she is an innocent owner. To have standing, a claimant need not prove ownership, only a colorable interest in the property to be forfeited. For example, in 7725 Unity Ave. North, we held that the holder of a junior mortgage had standing to establish that its loan proceeds were not subject to forfeiture because they were not the proceeds of illegal activity. 294 F.3d at 956-58. In One Lincoln Navigator, we held that the grandmother who paid for a car allegedly used for drug trafficking had standing to assert an innocent owner's interest because "she has the greatest financial stake in the car." 328 F.3d at 1013.

Here, in addition to asserting the innocent owner affirmative defense, Avila-Barraza's Answer alleged that the *in rem* funds *are not subject to forfeiture* because they "are not drug proceeds or proceeds of any other specified unlawful activity" and were not "involved in a transaction or attempted transaction in violation of [the money laundering statutes]." As the sole shareholder of LaOstriches, Avila-Barraza is the person with "the greatest financial stake" in putting the government to its proof

-8-

that these corporate assets are subject to forfeiture. If forfeiture is denied and the seized funds are returned to LaOstriches, the corporation will hold or use those funds for the ultimate benefit of its sole shareholder. For this part of her claim, the question is not whether Avila-Barraza is an innocent owner of the funds; it is whether the funds themselves are innocent. "[N]either the letter nor the spirit of the forfeiture statute allows the Government a windfall by forfeiting undisputedly innocent proceeds." 7725 Unity Ave. North, 294 F.3d at 958. In these circumstances, we conclude the district court erred in dismissing Avila-Barraza's claim on the ground that she lacks Article III standing.

**B.** As an alternative ground, the district court ruled that the government was entitled to summary judgment because Avila-Barraza failed to prove an innocent owner defense as a matter of law. This defense requires proof that Avila-Barraza is an "owner" of the seized funds, defined as "a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest"; it does not include "a person with only a general unsecured interest in, or claim against, the property or estate of another." 18 U.S.C. § 983(d)(1), (6). The district court concluded that Avila-Barraza did not have an ownership interest in the funds to be forfeited entitling her to assert an innocent owner's defense.

> Rather, LaOstriches, in its corporate capacity, possessed legal title and exercised complete control over the defendant property. Avila-Barraza did not take formal action as the company's sole director and shareholder to dissolve the corporation and gain personal access to the property or transfer the assets to her own personal accounts. As such, claimant falls within the category of persons "with only a general unsecured interest in" the seized corporate property and therefore without an ownership interest under the statute. § 983(d)(6)(B)(i).

Avila-Barraza argues that "[h]er manifest intent in transferring these funds to accounts she opened and controlled for LaOstriches was to hold them in trust for the

-9-

benefit of her minor children," and therefore she maintains an "equitable interest in the forfeited res, [by way of] a resulting trust." But she cites no cases in which a resulting trust has been implied by law to permit a corporate shareholder to disregard the separate corporate entity she intentionally created.

In general, under Missouri and Florida law, "an extraordinary degree of proof is required [to establish a resulting trust] . . . . The evidence must be so unquestionable in its character, so clear, cogent and convincing that no reasonable doubt can be entertained as to the truth and existence of the trust." Pizzo v. Pizzo, 295 S.W.2d 377, 385-86 (Mo. banc 1956); see Grapes v. Mitchell, 159 So. 2d 465, 469 (Fla. 1963) (a resulting trust must be "proved by evidence so clear, strong and unequivocal as to remove from the mind of the chancellor every reasonable doubt as to the existence of the trust"). Avila-Barraza failed to meet this demanding burden of proof. Moreover, when a corporate insider attempts to disregard the corporate entity to protect corporate assets from third party claims -- what has been referred to as "inside reverse veil piercing," 1 Fletcher & Jones, Fletcher Cyclopedia of the Law of Corporations § 41.70 (2015 rev. vol., 2015-2016 Cum. Supp.) -- judicial reluctance to imply an equitable ownership interest is even more pronounced:

> Although courts will look through corporate organizations to individuals when necessary to prevent injustice, doing so is the exception rather than the rule, and, ordinarily, a corporation will be regarded as a separate legal entity even though there be but a single stockholder.

Love v. Ben Hicks Chevrolet, Inc., 655 S.W.2d 574, 576 (Mo. App. 1983).

Here, relying on legal and financial experts in asset management for the wealthy, Avila-Barraza sought and received the benefits of LaOstriches's corporate status, including limited shareholder liability and tax benefits from the United States. Only now does she claim her intent was to create a resulting trust in which she

-10-

equitably owned the corporate assets for the benefit of her children. A court of equity will not disregard a corporation's exclusive ownership of assets and claims "where those in control have deliberately adopted the corporate form in order to secure its advantages." Schenley Distillers Corp. v. United States, 326 U.S. 432, 437 (1946). The district court did not err in granting summary judgment rejecting Avila-Barraza's claim that she is an innocent owner of the funds sought to be forfeited. Cf. United States v. Tracts 10 & 11 of Lakeview Heights, 51 F.3d 117, 121 (8th Cir. 1995) (rejecting claim of ownership interest because claimant did not prove the elements of a constructive trust under Wisconsin law).

**C.** There remains one loose end. Affirming the district court's conclusion that Avila-Barraza lacked standing to file a claim in the forfeiture proceeding because she failed to prove she was an innocent owner would end the appeal. But we conclude that Avila-Barraza did have standing, and in particular, standing to contest the government's claim that the funds are drug trafficking proceeds subject to civil forfeiture. The district court wisely did not ignore this issue. Noting the government has the burden to prove that property is subject to forfeiture, the court explained:

> [Avila-Barraza] does not dispute that the government has met its burden, and the illegal source of the property at issue is supported by ample evidence in the record. Therefore, the claimant is deemed to have conceded the forfeitable nature of the property, and summary judgment is appropriate for her failure to meet her burden of proof as to innocent ownership.

On appeal, neither Avila-Barraza nor LaOstriches challenges this conclusion, and neither argues that summary judgment was improperly granted on this issue. Accordingly, the issue is waived on appeal.

For the foregoing reasons, the judgment of the district court is affirmed.

_____