# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 13, 2021

Lyle W. Cayce
Clerk

No. 20-20471

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

FEDERAL REPUBLIC OF NIGERIA

*Claimant—Appellee*,

*versus*

THE M/Y GALACTICA STAR, ET AL

*Defendants*,

AND

LIGHTRAY CAPITAL, L.L.C.,

*Claimant—Appellant*,

*versus*

ENRON NIGERIA POWER HOLDING, LIMITED,

*Movant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-2166

No. 20-20471

Before DAVIS, DUNCAN, and OLDHAM, *Circuit Judges*.
W. EUGENE DAVIS, *Circuit Judge*:

In this civil forfeiture case, the district court granted forfeiture of a yacht, the M/Y Galactica Star, to the United States Government ("Government"). Two unsuccessful claimants appeal orders by the district court denying their claims. LightRay Capital, L.L.C. ("LightRay"), the sole shareholder of the corporate owner of the yacht, appeals the district court's 2018 order striking its claims and dismissing it for lack of standing; Enron Nigeria Power Holding, Limited ("Enron Nigeria"), a judgment creditor of the Federal Republic of Nigeria ("Nigeria"), appeals the district court's 2020 order granting a consent motion that resulted in the forfeiture of the yacht. Because (1) the district court did not err in dismissing LightRay, the sole shareholder of the yacht's corporate owner, from the proceedings for lack of standing, and (2) Nigeria's Verified Claim was at all times immune from attachment and execution under the Foreign Sovereign Immunities Act ("FSIA"), we AFFIRM the district court's ruling with respect to LightRay's appeal and DISMISS Enron Nigeria's appeal for lack of jurisdiction.

## I.    BACKGROUND

This case arises from an alleged international conspiracy to secure lucrative oil and gas contracts in Nigeria in exchange for bribes involving real estate, furniture, artwork, and other gifts. Kolawale Aluko, a Nigerian national, allegedly funneled millions of dollars of goods and services to Diezani Alison-Madueke, the Minister for Petroleum Resources for Nigeria from 2010 to 2015. The Government alleges that in her role as overseer of Nigeria's state-owned oil company, Alison-Madueke, in return for these bribes, awarded lucrative contracts to companies designated by Aluko and other co-conspirators, which were unqualified to perform them or failed to

perform the contracts. These bribes funded a lavish and privileged lifestyle for Alison-Madueke and her family. Aluko and his co-conspirators then allegedly laundered the profits of the contracts (totaling more than $1.5 billion) into and through the United States using various shell companies and complex financial transactions. Aluko and his co-conspirators allegedly used proceeds from the conspiracy to purchase a 65-meter yacht, the M/Y Galactica Star ("Galactica Star" or "yacht"), and numerous other assets.[1]

Alleging that the yacht and other assets (collectively, "the Assets") were the ill-gotten gains of an international conspiracy, the Government filed an in rem civil forfeiture complaint under 18 U.S.C. § 981(a)(1)(A) and (a)(1)(C) to claim the Assets, worth approximately $144 million.[2] On August 11, 2017, Nigeria filed a verified claim to the Assets ("the Verified Claim"), asserting that the conspirators had misappropriated funds from Nigeria's treasury and that Nigeria was the innocent owner of the Assets.[3] Days before the Government initiated forfeiture proceedings, Appellant LightRay purchased 100 percent of the common stock in Earnshaw Associates Ltd. ("Earnshaw"), a company that owned the yacht and owned or partly owned

---

[1] The other assets include real estate located at 1049 Fifth Avenue, Units 11B and 12B, New York, NY 10032, 807 Cima del Mundo Road, Montecito, CA 90077, and 815 Cima del Mundo Road, Montecito, CA 90077; proceeds from a foreclosure sale of real estate located at 157 West 57th Street, Unit 79, New York, NY 10019; and "all rights and interests" in a promissory note executed by a Louisiana marine services company named Cross Holdings.

[2] Section 971 provides that "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property" and "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to [such a] violation . . . or a conspiracy to commit such offense" is subject to forfeiture to the United States. 18 U.S.C. § 981(a)(1)(A),(C).

[3] Nigeria filed a renewed verified claim on December 4, 2017.

all of the other Assets. On December 29, 2017, LightRay filed a verified claim to the Assets, based on its ownership of Earnshaw.

Appellant Enron Nigeria held an $11 million judgment against Nigeria and filed a sealed motion to recover its judgment against any recovery Nigeria might have through its claim in the forfeiture proceedings. To effect this recovery of its debt, Enron Nigeria sought an order under Texas law for the turnover of Nigeria's claim to Enron Nigeria for continued litigation of its claims.

In late 2017, the Galactica Star was being held in Cancun, Mexico, under an order of attachment issued by a Mexican court. The Government filed a motion in the district court for a protective order "directing the parties to take an action to seize, secure, maintain, or preserve" the ship. The magistrate judge granted this motion on March 2, 2018, ordering LightRay to pay for the maintenance of the ship. The court expressly declined to rule on which party owned the Galactica Star and noted that LightRay would be entitled to partial reimbursement of its costs if the yacht were to be determined to belong to the Government.

On May 10, 2018, the Government, LightRay, and Earnshaw entered into a stipulation to resolve their claims to the Galactica Star. Through the stipulation, LightRay withdrew its claim to the yacht,[4] agreed to transfer custody and control of it to the Government, and agreed not to oppose an interlocutory sale of it. LightRay then filed a notice of withdrawal of its claim to the Galactica Star on May 24, 2018.[5] Shortly thereafter, the Government moved to strike LightRay's claim to the (non-yacht) assets that remained at

---

[4] This stipulation did not apply to any of the other assets at issue in this case.

[5] The Government then assumed custody of the yacht and spent approximately $170,000 per month to maintain it.

issue ("the Remaining Assets") on the ground that LightRay lacked standing to assert a claim to those assets. The district court granted the motion in an oral hearing held on October 24, 2018.[6]

The Government and Nigeria thereafter filed a joint motion for an order authorizing interlocutory sale of the yacht. Enron Nigeria filed an emergency ex parte application for turnover and appointment of receiver under seal, but the district court denied the motion. The district court subsequently granted a motion to confirm the interlocutory private sale of the Galactica Star on July 23, 2019, in which the yacht was sold for $37.4 million and the proceeds of the sale were held as substitute res pending the conclusion of the forfeiture action. By early 2020, the only remaining claimant to the yacht was Nigeria. The Government and Nigeria filed a joint motion for consent forfeiture judgment on February 24, 2020. In their motion, Nigeria also withdrew its claim to the substitute res.

Still in pursuit of satisfaction of its judgment, Enron Nigeria filed a second amended application for relief, this time unsealed, on March 9, 2020. It opposed the motion for consent judgment and again requested turnover and appointment of a receiver. On May 19, 2020, the district court heard argument from Enron Nigeria, the Government, and Nigeria regarding the motion for the consent judgment. Although LightRay filed no motions or briefs with respect to any objections it had to the motion for consent judgment, counsel appeared at the hearing to assert LightRay's claim to the yacht proceeds and contest the validity of the stipulation through which it had withdrawn its claim to the yacht. LightRay took the position that it had

---

[6] LightRay attempted to appeal the district court's standing ruling, but this Circuit dismissed the appeal for lack of jurisdiction because the district court had not certified the ruling as an appealable final judgment. *See United States v. M/Y Galactica Star*, 784 F. App'x 268, 272, 276 (5th Cir. 2019) (per curiam).

No. 20-20471

entered into the May 10, 2018 stipulation under duress and, therefore, the stipulation was invalid.

After hearing arguments, the district court denied Enron Nigeria's motion for turnover relief and granted the motion for consent judgment of forfeiture to the United States. It determined that the Government had sole claim to the yacht, and that Nigeria had no lawful claim to it and therefore Enron Nigeria had nothing against which to recover its debt. With respect to LightRay, the court rejected any argument that its stipulation and withdrawal of its claim to the yacht was invalid. The court also held that LightRay lacked standing to assert a claim to the yacht or the Remaining Assets. On July 15, 2020, the district court certified as final judgments under Rule 54(b): (1) the 2018 order striking LightRay from the litigation, and (2) the 2020 order granting forfeiture of the Galactica Star proceeds to the Government.

Both LightRay and Enron Nigeria timely appealed. LightRay challenges the district court's 2018 order striking its claims and dismissing it from the proceedings, and the 2020 order granting forfeiture of the Galactica Star proceeds to the Government. Enron Nigeria challenges the 2020 order denying its motion for turnover relief and granting the Government and Nigeria's joint motion for consent judgment.

## II.   LEGAL STANDARDS

"This court reviews questions of standing de novo."[7] This Court "review[s] for clear error all facts expressly or impliedly found by the district

---

[7] *United States v. $500,000.00 in U.S. Currency ("Five Hundred Thousand")*, 591 F.3d 402, 404 (5th Cir. 2009) (quoting *Nat'l Athletic Trainers' Ass'n, Inc. v. U.S. Dep't of Health & Human Servs.*, 455 F.3d 500, 502 (5th Cir. 2006)) (quotation marks omitted).

court" that bear upon standing.[8] "The claimant opposing forfeiture bears the burden of establishing [its] standing."[9]

This Court reviews a district court's ruling on a turnover order for abuse of discretion.[10] "A court abuses its discretion when it acts 'in an unreasonable or arbitrary manner . . . without reference to any guiding rules and principles.'"[11]

As a threshold matter, however, this Court must have jurisdiction to hear a case or controversy. The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country."[12] "The existence of subject matter jurisdiction under the FSIA is a question of law which this Court reviews de novo."[13]

## III.  LIGHTRAY'S APPEAL

The district court rejected LightRay's claim to the proceeds of the sale of the Galactica Star and other assets based on its ownership of the stock of Earnshaw, the owner of the yacht and most of the Remaining Assets. As to LightRay's claim to the proceeds of the sale of the Galactica Star, the district court rejected LightRay's attempt to set aside the stipulation in which LightRay withdrew its claim to the proceeds based on its argument that the

---

[8] *Rivera v. WyethAyerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002) (*citing Pederson v. La. State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000)).

[9] *Five Hundred Thousand*, 591 F.3d at 404 n.2 (citation omitted).

[10] *Bollore S.A. v. Imp. Warehouse, Inc.*, 448 F.3d 317, 321 (5th Cir. 2006) (citing *Beaumont Bank v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991)).

[11] *Id.* (quoting *Beaumont Bank*, 806 S.W.2d at 226).

[12] *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989).

[13] *Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo Gen. del Sindicato Revolucionario de Trabajadores Petroleros de la Republica Mexicana, S.C.*, 923 F.2d 380, 386 (5th Cir. 1991) (citation omitted).

No. 20-20471

Government coerced it to do so. On appeal, LightRay argues that it was unable to demonstrate the basis for its coercion claim because the case had been stayed and shortly thereafter LightRay was struck from the proceedings in district court. LightRay thus contends that the district court's judgment of forfeiture of the Galactica Star proceeds to the Government violated LightRay's due process rights. As to the Remaining Assets, LightRay contends that it has standing to contest forfeiture because it has "an interest in the seized property" and it can assert an "innocent owner" defense under § 983(d).

### A.    Waiver of Duress Argument Regarding the Stipulation

We consider first whether the district court abused its discretion in ruling that LightRay waived any argument that it was coerced into withdrawing its claim to the proceeds of the sale of the yacht.[14] The district court based this ruling on the fact that LightRay stipulated to withdraw its claim—and two weeks later, formally withdrew its claim.[15]

We see no basis for a claim of coercion. We agree with the district court that this is particularly so in light of the fact that LightRay did not challenge the stipulation based on this alleged duress for over two years[16] and

---

[14] *See, e.g., In re Signal Int'l, LLC*, 579 F.3d 478, 487 (5th Cir. 2009) ("We review for abuse of discretion the district court's ruling that Signal's challenge was untimely and that the defense was thus waived.").

[15] Also, LightRay filed no motion for relief from the district court's order dismissing it from the case and it filed no brief in advance of the May 19, 2020 telephone conference fleshing out its argument or requesting an evidentiary hearing to produce evidence that would support its argument.

[16] The Government, LightRay, and Earnshaw entered into the stipulation in which LightRay withdrew its claim to the yacht on May 10, 2018. LightRay only challenged the validity of the stipulation at the telephone conference regarding the motion for consent judgment on May 19, 2020, but it did not file any opposition to the motion prior to the conference either.

No. 20-20471

it did not appeal to the district court the magistrate judge's order requiring it to pay the maintenance costs. Moreover, LightRay engaged in negotiations and went through numerous drafts with the Government over the language of the stipulation, and it voluntarily withdrew its claim to the yacht two weeks after the stipulation was signed. LightRay also presumably received benefit from the waiver—namely, not having to pay hundreds of thousands of dollars monthly in yacht maintenance costs. Also, as the district court pointed out, LightRay knew how to file a motion for relief of a stay order, which it did not do. All the circumstances surrounding the stipulation thus support a rejection of the unsupported duress argument. For these reasons, we are satisfied that the district court did not abuse its discretion in rejecting LightRay's duress argument and its attempt to nullify its affirmative action of withdrawing its claim to the yacht.

### B.     Dismissal of LightRay's Claim to Remaining Assets

The district court dismissed LightRay's claim to the Remaining Assets based on its conclusion that LightRay lacked standing under the civil forfeiture statute to assert a claim. Under 18 U.S.C. § 981(a)(1), the United States is permitted to seize property traceable to certain enumerated crimes. Civil forfeiture proceedings are governed by § 983, which provides that, "[i]n any case in which the Government files . . . a complaint for forfeiture of property, any person claiming an interest in the seized property may file a claim asserting such person's interest in the property."[17]

We have held that to show standing in the civil forfeiture context, a claimant must show both constitutional and "prudential" standing.[18] As

---

[17] 18 U.S.C. § 983(a)(4)(A).

[18] *United States v. One 18th Century Colombian Monstrance*, 797 F.2d 1370, 1375 (5th Cir. 1986) ("A claimant . . . must be able to show at least a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement and 'prudential

No. 20-20471

LightRay points out, the Eighth Circuit has held that a sole shareholder of a corporation has constitutional standing under Article III in a civil forfeiture of corporate assets because "only a colorable interest in the property to be forfeited" is required.[19] We agree that LightRay is able to meet the standard for constitutional standing in this matter. As to what we previously identified as "prudential" standing, however, we conclude that the district court properly dismissed LightRay. As explained by the Supreme Court in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, the label "prudential standing" is "misleading."[20] Rather, the issue is whether, using traditional principles of statutory interpretation, the party "has a cause of action under the statute."[21] As applied in this case, the issue then is whether a shareholder of a corporation has a cause of action under § 983(a)(4)(A), i.e., "an interest in the seized property," to challenge a civil forfeiture of the corporation's assets.

LightRay argues that it has "an interest in the seized property," as required by § 983(a)(4)(A), because it is the owner of 100 percent of Earnshaw's shares, and Earnshaw directly or indirectly owns the Remaining Assets, namely: (1) a 49.9 percent stake in 1049 Fifth Avenue, Units 11B and 12B, New York, NY 10032, (2) a 49.9 percent stake in Wamdara, Inc., a California company whose assets include real property located at 807 Cima del Mundo Road, Montecito, CA 90077 and 815 Cima del Mundo Road,

---

considerations defining and limiting the role of the courts.'" (quoting *Worth v. Seldin*, 422 U.S. 490 at 517–18 (1975)).

[19] *United States v. Eleven Million Seventy-One Thousand One Hundred & Eighty-Eight Dollars & Sixty-Four Cents ($11,071,188.64) in United States Currency*, 825 F.3d 365, 371 (8th Cir. 2016).

[20] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014).

[21] *Id.* at 128.

Montecito, CA 90077; and (3) an 87.5 percent stake in the rights and interests held by Rivermount International Ltd., or its affiliates or assignees.[22] LightRay contends that "Congress has . . . conferr[ed] broad standing to civil forfeiture claimants," as § 983(d)(3) provides that "any person claiming an interest in the seized property may file a claim asserting such person's interest in the property." LightRay emphasizes that Congress did not tie the term "interest" to direct legal ownership. We disagree.

As the Supreme Court has noted, "[a] basic tenet of American corporate law is that the corporation and its shareholders are distinct entities . . . . An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets . . . ."[23] This Court too has noted that "a corporation is a separate entity from its shareholders," and therefore "the shareholders' interest in the corporation does not equate to ownership by the shareholder of specific corporation assets."[24] Furthermore, "[a] corporate parent which owns the shares of a subsidiary does not, for that reason, own or have legal title to the assets of the subsidiary . . . ."[25] These basic principles of corporate law are applicable in California, New York, and the British

---

[22] It does not appear that Earnshaw has retained any ownership to or proceeds of the auction for 157 West 57th Street, Unit 79, New York, NY 10019, as it assigned its rights and causes of action to Margaret Song of Song Realty on February 27, 2018.

[23] *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474–75 (2003) (citations omitted). *See also* 18A Am. Jur. 2d Corporations § 623 ("Stated another way, the shareholders of a corporation do not own the property of a corporation; the corporation does. Thus, a purchase of stock in a corporation is not a purchase of the corporate assets . . . Likewise, a parent corporation's ownership of all of the shares of its subsidiary does not make the subsidiary's assets the parent's assets.").

[24] *United States v. Wyly*, 193 F.3d 289, 304 (5th Cir. 1999). Although *Wyly* involved criminal forfeiture, our discussion of a shareholder's interest was in the context of general corporate principles.

[25] *Dole Food Co.*, 538 U.S. at 475 (citation omitted).

Virgin Islands, which are all the jurisdictions of incorporation for the subsidiary companies that own the Remaining Assets in this case.[26]

Simply put, LightRay's interest in Earnshaw's stock does not establish LightRay's interest in Earnshaw's corporate assets. Accordingly, we conclude that LightRay has no cause of action under the civil forfeiture statute and that the district court did not err in dismissing LightRay from this matter.

LightRay also argues that it is entitled to assert the "innocent owner" defense under § 983(d). Under this provision, "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute," but the burden is placed on the claimant to prove his innocent ownership.[27] LightRay emphasizes the language of the statute dealing with what an innocent owner must establish when it acquires a property interest "after the conduct giving rise to the forfeiture has taken place." As a preface to listing these requirements, the statute provides that it applies "at the time that [owner] acquired the *interest in the property*."[28] LightRay argues that this language of the statute supports its argument that acquisition of an "interest in the property" and "not direct ownership" is "all that is required for

---

[26] *See, e.g., United States v. Bennett*, 621 F.3d 1131, 1136 (9th Cir. 2010) (California law); *Brock v. Poor*, 216 N.Y. 387, 402 (N.Y. 1915) (New York law); *Ostad v. Nehmadi*, 31 Misc. 3d 1211(A), 2011 WL 1420879, at *8 (N.Y. Sup. Ct. 2011) (New York law); *In re Kingate Mgmt. Ltd. Litig.*, No. 09-cv-5386, 2016 WL 5339538, at *36 (S.D.N.Y. Sept. 21, 2016) (British Virgin Islands law).

[27] 18 U.S.C. § 983(d)(1).

[28] *Id.* § 983(d)(3)(A) (emphasis added). Specifically, the statutory text states: "With respect to a property interest acquired after the conduct giving rise to the forfeiture has taken place, the term 'innocent owner' means a person who, at the time that person acquired the interest in the property — (i) was a bona fide purchaser or seller for value . . . ; and (ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture."

standing to assert the [innocent owner] defense." However, the statute also requires that an "innocent owner" be "a person with an ownership interest in the specific property sought to be forfeited," and expressly excludes "a person with only a general unsecured interest in . . . the property or estate of another."[29]

As a preliminary matter, LightRay neither raised this innocent owner defense in its briefing opposing the Government's motion to strike it from the case in district court, nor did it raise it during the motion hearing held on October 24, 2018. Therefore, the argument is waived.[30]

Nevertheless, even on the merits, LightRay's innocent owner argument is unavailing. As discussed above, the basic principle of American corporate law is that the corporation and its shareholders are distinct entities, and that an individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets. In *Eleven Million*, the Eighth Circuit concluded that a sole shareholder "did not have an ownership interest in the funds to be forfeited entitling her to assert an innocent owner's defense" because the *corporation* (and not the shareholder) "possessed legal title and exercised complete control over the defendant property."[31] The Eighth Circuit explained that, because the shareholder "did not take formal action as the company's sole director and shareholder to dissolve the corporation and gain personal access to the property or transfer the assets to her own personal accounts," she "[fell] within the category of persons 'with only a

---

[29] 18 U.S.C. § 983(d)(6)(A),(B)(i).

[30] *SCA Promotions, Inc. v. Yahoo!, Inc.*, 868 F.3d 378, 384 (5th Cir. 2017) (explaining that "arguments not raised before the district court are waived and cannot be raised for the first time on appeal" (quoting *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007))).

[31] 825 F.3d 365, 372 (8th Cir. 2016).

general unsecured interest in' the seized corporate property and therefore without an ownership interest under the statute."[32] Similarly, LightRay, as a shareholder of Earnshaw, only has a general unsecured interest in the assets being forfeited and therefore does not have an ownership interest such that it may assert the innocent owner defense.

Also, we cannot overlook that LightRay chose to maintain Earnshaw as a separate corporate entity, thereby securing all the attendant advantages of doing so, including an attempt by its principals to support the argument that LightRay is an innocent owner. We agree with the Eighth Circuit that "[a] court of equity will not disregard a corporation's exclusive ownership of assets and claims 'where those in control have deliberately adopted the corporate form in order to secure its advantages.'"[33] This Court therefore declines to allow LightRay to disregard the corporate entity when it is advantageous to LightRay and, on the other hand, benefit from the corporate entity when it wishes. Accordingly, shareholders such as LightRay do not have an "ownership interest in the *specific* property sought to be forfeited" and therefore LightRay cannot assert the innocent owner defense.[34]

---

[32] *Id.* (quoting 18 U.S.C. § 983(d)(6)(B)(i)).

[33] *Id.* at 373 (quoting *Schenley Distillers Corp. v. United States*, 326 U.S. 432, 437 (1946)); *see also First Beneficial*, 2009 WL 1035233, at *4 ("The law cannot allow a sole corporate shareholder to disregard the corporate entity when it suits him and allow him the benefit of the corporate entity when he desires.").

[34] *See, e.g., United States v. All Assets Held in Acct. No. XXXXXXXX*, 299 F. Supp. 3d 121, 129 (D.D.C. 2018) ("[C]ourts generally have held that a corporate shareholder lacks standing to contest the forfeiture of a corporation's assets . . . . This is so because a shareholder has no ownership interest in any specific assets of a corporation."); *United States v. Young*, 77 F. Supp. 3d 1191, 1192 (D. Utah 2014) ("Established case law has made clear that shareholders of a corporation and members of an LLC do not have standing to challenge the forfeiture of the entity's assets."); *United Sates v. New Silver Palace Restaurant, Inc.*, 810 F. Supp. 440, 442 (E.D.N.Y. 1992) ("Since the shareholder claimants are neither the owners nor lienholders with respect to corporate assets, they have no

No. 20-20471

## IV.    ENRON NIGERIA'S APPEAL

Enron Nigeria holds a $11 million judgment against Nigeria and filed a claim in the forfeiture proceeding against any recovery Nigeria might make in that proceeding. Enron Nigeria challenges the district court's 2020 order denying its motion for turnover relief, permitting Nigeria to voluntarily dismiss its claim, and granting the Government and Nigeria's joint motion for consent judgment for forfeiture of the Galactica Star proceeds to the Government. Enron Nigeria argues that Nigeria's Verified Claim is not immune from attachment and execution under the FSIA because Nigeria waived its sovereign immunity in this case. However, Nigeria asserts that it did not waive its sovereign immunity and therefore this Court lacks jurisdiction over the dispute between Enron Nigeria and Nigeria. The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country."[35] "It also provides the sole, comprehensive scheme for enforcing judgments against foreign sovereigns in civil litigation."[36] Section 1609 of the FSIA provides, in relevant part, that "the property in the United States of a foreign state shall be immune from attachment, arrest, and execution except as provided in sections 1610 and 1611 of this chapter."[37]

---

standing in this forfeiture proceeding."); *United States v. 479 Tamarind Dr.*, No. 1:98-cv-2279, 2011 WL 1045095, at *2 (S.D.N.Y. Mar. 11, 2011) ("[A] shareholder has no standing to contest the forfeiture of an asset of a corporation because shareholders do not have an ownership interest in any specific property owned by that corporation."); *United States v. Real Prop. Associated with First Beneficial Mortg. Corp.*, No. 3:08-CV-285, 2009 WL 1035233, at *3 (W.D.N.C. Apr. 16, 2009) ("A shareholder in a corporation has no legal title to the assets of the corporation, but has a form of an equitable interest therein . . . . That interest, however, is not in any *specific* asset or assets of the corporation, but rather in the general holdings of the corporation.").

[35] *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989).

[36] *Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417, 428 (5th Cir. 2006).

[37] 28 U.S.C. § 1609.

Enron Nigeria bases its waiver argument on Section 1610(a) of the FSIA, which states that "[t]he property in the United States of a foreign state . . . used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a state."[38] Enron Nigeria argues that Nigeria waived its sovereign immunity because it used the Verified Claim "to ask for, and participate in the commercial sale of the yacht in the United States, thus lending the [V]erified [C]laim . . . eligible for seizure" by Enron Nigeria, as a judgment creditor of Nigeria. Nigeria does not contest that the sale of the Galactica Star was "commercial activity," but it denies that Nigeria itself engaged in commercial activity.

We conclude that Nigeria did not waive its sovereign immunity by encouraging the United States Government to sell the Galactica Star. As this Court noted in *Connecticut Bank of Commerce v. Republic of Congo*, "what matters under the [FSIA] is how the *foreign state* uses the property, not how private parties may have used the property in the past."[39] Here, the United States Government is the party that "used" the property in commercial activity, not Nigeria, and only the foreign state itself can waive its sovereign immunity.[40] Although Enron Nigeria contends that Nigeria participated in

---

[38] *Id.* § 1610(a).

[39] 309 F.3d 240, 256 n.5 (5th Cir. 2002).

[40] *See, e.g., Rubin v. Islamic Republic of Iran*, 830 F.3d 470, 481 (7th Cir. 2016) ("[A] third party's commercial use of a foreign state's property does not trigger the § 1610(a) exception to execution immunity. Rather, § 1610(a) applies only when *the foreign state itself* has used its property for a commercial activity in the United States[.]"); *Aurelius Cap. Partners, LP v. Republic of Argentina*, 584 F.3d 120, 131 (2d Cir. 2009) ("[B]efore the retirement and pension funds at issue could be subject to attachment, the funds *in the hands of the Republic* must have been 'used for a commercial activity.'"); *Flatow v. Islamic Republic of Iran*, 76 F.Supp.2d 16, 23 (D.D.C. 1999) ("[T]he provision's applicability turns on the

the sale of the Galactica Star, including agreeing to a target sales price and auctioneer, the motion for interlocutory sale repeatedly designates the United States Government as the party orchestrating the sale (albeit "in consultation with the Federal Republic of Nigeria"), and as the party entering into the Purchase Agreement with the winning bidder and receiving the funds from the buyer. Moreover, the property that Enron Nigeria seeks to attach is not even the yacht itself—it is Nigeria's Verified Claim to the yacht. Enron Nigeria argues that Nigeria "used its Verified Claim to participate in the sale of the [y]acht," but cites no authority to support a conclusion that simply consulting with the United States Government on an interlocutory sale conducted by others, under the supervision and guidance of the United States Government, constitutes "commercial activity" within the meaning of the FSIA.

Because the "commercial activity" exception to the FSIA does not apply, Nigeria has not waived its sovereign immunity and this Court lacks jurisdiction to consider Enron Nigeria's arguments on the merits. Accordingly, Enron Nigeria's appeal is dismissed.

## V.    CONCLUSION

For these reasons, we conclude that the district court did not abuse its discretion in determining that LightRay deliberately withdrew its claim against the yacht and waived its argument that it did so under duress. We also conclude that it did not err in dismissing LightRay from the proceedings for lack of standing with respect to the Remaining Assets. Additionally, Nigeria's Verified Claim was at all times immune from attachment and execution under the FSIA and Enron Nigeria has not met its burden to show

---

foreign state's actions with respect to commercial use . . . [not to] foreign state property that is being used by a non-agent third party.").

that Nigeria waived its sovereign immunity such that this Court may exercise jurisdiction to consider this claim. Accordingly, we AFFIRM the district court's order with respect to LightRay and DISMISS Enron Nigeria's appeal for lack of jurisdiction.